IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 25, 2001

## STATE OF TENNESSEE v. JANICE CAROL BISKNER

**Direct Appeal from the Criminal Court for Hamilton County**
**Nos. 227227, 227228, and 228928      Rebecca J. Stern, Judge**

---

**No. E2000-01440-CCA-R3-CD**
**November 13, 2001**

---

Defendant was convicted of driving under the influence ("DUI"), fourth or subsequent offense, driving while license revoked, and child endangerment. In this appeal, Defendant challenges all convictions on the ground that the trial court's refusal to bifurcate the trial proceedings violated her right to a fair trial. Defendant also argues that recently amended Tennessee Code Annotated section 55-10-403(a)(1) is unconstitutional and that her sentence is excessive. After a review of the record and applicable law, we reverse Defendant's convictions and remand this case for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Ardena J. Garth, District Public Defender; William Dobson, Assistant Public Defender; and Donna R. Miller, Assistant Public Defender, for the appellant, Janice Carol Biskner.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William H. Cox, III, District Attorney General; Tom Kimball, Assistant District Attorney General; and Parke Masterson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Janice Carol Biskner, was convicted by a Hamilton County jury of child endangerment, Tenn. Code Ann. § 55-10-414(1), a Class A misdemeanor; driving while license revoked, Tenn. Code Ann. § 55-50-504, a Class B misdemeanor; and driving under the influence of an intoxicant ("DUI"), fourth or subsequent offense, Tenn. Code Ann. § 55-10-401, a Class E felony. The trial court imposed a sentence of eleven months and twenty-nine days for each of Defendant's two misdemeanor convictions (an improper sentence for the driving on a revoked license conviction), a sentence of two years for Defendant's felony DUI conviction, and ordered all sentences to be served concurrently for an effective sentence of two years in the Tennessee Department of Correction.

On appeal, Defendant raises the following issues: (1) whether the trial court erred by failing to bifurcate Defendant's trial proceedings, thereby allowing the jury to hear prejudicial evidence of Defendant's prior DUI convictions which compromised her right to a fair trial; (2) whether the recent amendment to Tennessee Code Annotated section 55-10-403(a)(1), regarding penalties for DUI convictions, violates the prohibitions against ex post facto laws in our state and federal constitutions; and (3) whether the trial court erroneously applied sentencing enhancement factors in determining Defendant's sentences.

Based on the recent decision of this Court in State v. Ronnie Lamar Evans, No E2000-00327-CCA-R9-CD, 2001 WL 501414, Hamilton County (Tenn. Crim. App., Knoxville, May 11, 2001) no perm. to app. filed, we reverse Defendant's conviction for felony DUI and remand this matter for a new trial in which guilt or innocence is determined in a proceeding separate from that which requires the jury to hear evidence concerning prior DUI convictions. In addition, we reverse Defendant's misdemeanor convictions for the reasons stated herein, and, in the event of further review and/or for guidance on remand, we find that the penalties imposed under the 1998 amendment to Tennessee Code Annotated section 55-10-203(a)(1) do not violate an accused's constitutional rights against ex post facto laws and that certain enhancement factors were improperly applied to Defendant's felony DUI sentence.

## FACTUAL BACKGROUND

On July 14, 1998, the East Ridge Police Department dispatcher alerted the officers in the vicinity of the East Ridge movie theater to be on the lookout for a Jeep with a specific license tag number. Lieutenant Barry Yates was the first to spot the Jeep. It was traveling south on McBrien Road and, in Yates' opinion, the Jeep was being driven "erratically." Once behind the Jeep, Yates turned on his blue lights and siren in an attempt to pull the vehicle over. The driver appeared oblivious to his presence, however, and continued driving down McBrien Road. When the Jeep reached Ringgold Road, it turned right and proceeded to Tombras Avenue. Yates was still following the Jeep, with the police car siren and blue lights on. When it seemed apparent to Yates that the driver of the Jeep had no intention of stopping, he radioed for assistance. Lieutenant Butch Bryson, another East Ridge police patrol officer, responded. The Jeep was traveling at approximately 20 miles per hour when Bryson met Yates on Tombras Avenue. Bryson blocked the road in front of the Jeep with his police car, which forced the driver into the parking lot at East Ridge City Hall where it finally came to a stop.

Officer Yates then approached the Jeep. The Defendant was driving, and her eight-year-old son was seated on the front seat of the passenger side of the vehicle. Yates noted that Defendant's speech was slurred and her clothes were disarranged. The boy appeared frightened and nervous. Yates went to the passenger side of the car. Meanwhile, Officer Bryson approached the driver's side and asked Defendant to step out of the vehicle. Bryson testified that Defendant moved slowly and seemed to have trouble getting out. Once out of the vehicle, she was unsteady on her feet and unable to stand without assistance. She also had an odor of alcohol on her person. Based on their experience, both officers concluded that Defendant was intoxicated.

Yates gave Defendant's son a ride home, placing him in the care of his adult-age brother. Bryson attempted to give Defendant several field sobriety tests, but she was unable to follow Bryson's instructions while maintaining an upright position. For safety reasons, Bryson then dispensed with further testing and arrested her for driving under the influence of alcohol. Arriving at the police department, Defendant voluntarily signed an implied consent form wherein she agreed to submit to a test to determine the alcohol content in her blood. Using an Intoximeter 3000 "EC/IR" machine, Bryson administered a breath alcohol test, which determined Defendant's blood alcohol content to be 0.27. A check on the status of Defendant's driver's license revealed that she had been driving with a revoked license at the time of this DUI offense.

Prior to her trial, Defendant filed a motion in limine requesting, inter alia, that the trial court prohibit the State from referring to Defendant's prior DUI convictions during the trial. Defendant argued that, under Tennessee Evidence Rule 403, this evidence should be considered inadmissible because the unfair prejudice outweighed any probative value. In the alternative, Defendant requested that the trial court bifurcate the trial proceedings to withhold evidence of prior DUI convictions until the jury had made a determination concerning Defendant's guilt or innocence.

The trial court denied Defendant's motion on the ground that proof of prior DUI convictions constituted an element of felony DUI. The trial court suggested that the proof might be less prejudicial if the State and Defendant stipulated as to Defendant's prior DUI convictions, a brief summary of which could be read into evidence at trial. On the condition that she may reserve the issue for appeal, Defendant agreed. The resulting stipulation read at trial informed the jurors that Defendant had two previous convictions for driving under the influence of an intoxicant in Hamilton County; one conviction in East Ridge, Tennessee; and one conviction in Fort Oglethorpe, Georgia. The jury was cautioned that the stipulation should be used only as proof of an element of the offense charged, to wit: the element requiring proof that Defendant had three or more DUI convictions, which enhanced Defendant's DUI offense from a misdemeanor to a Class E felony.

## ANALYSIS

### I. Bifurcation of Trial Proceedings

Defendant contends that the trial court erred by failing to bifurcate Defendant's trial proceedings to withhold evidence of prior DUI convictions until the jury had made a determination concerning Defendant's guilt or innocence for the felony DUI offense. Defendant argues that, because bifurcation was necessary to avoid the possibility of prejudice and preserve her right to procedural fairness, this Court should reverse all convictions and grant her a new trial with bifurcated proceedings. After a thorough review of the record, we agree and reverse Defendant's convictions.

### A. Defendant's Felony DUI Conviction

In its brief, the State acknowledges that the trial court erred in refusing to bifurcate Defendant's trial for the felony DUI offense. On April 23, 2001, Defendant and the State filed a joint motion to hold this appeal in abeyance pending the decision in State v. Ronnie Lamar Evans,

No E2000-00327-CCA-R9-CD, 2001 WL 501414, Hamilton County (Tenn. Crim. App., Knoxville, May 11, 2001), no perm. to app. filed, which addressed this precise issue. The motion to stay Defendant's appeal was granted the same day. On May 11, 2001, this Court decided Evans, which we agree is dispositive of the matter regarding Defendant's felony DUI conviction.

In Evans, the defendant was charged with DUI, fourth offense. Prior to trial, a dispute arose concerning whether the defendant's prior DUI convictions were indeed elements of the charged offense that must be proven during trial, or whether this evidence was more appropriately brought before a jury during a second "enhancement" phase after guilt had been determined. The state pointed out that there was a need for consistency in the law regarding this issue because not all courts bifurcated proceedings of this type. This Court granted the state's application for an interlocutory appeal which addressed, inter alia, (1) whether prior DUI convictions should be used only to enhance a sentence and are, therefore, not elements of DUI, fourth offense; and (2) whether a felony DUI trial should be bifurcated into separate phases as required by Tennessee Code Annotated section 40-35-203(e). As a result of the supreme court's decision in State v. Robinson, 29 S.W.3d 476 (Tenn. 2000), the Evans court concluded that a DUI, second or subsequent offense, does not constitute a new offense but merely enhances the DUI conviction and, further, that in situations such as these, the trial court should bifurcate the proceedings to minimize prejudice to the defendant. See Evans, 2001 WL 501414 at *2.

Evans requires a bifurcated hearing in order to provide procedural fairness. See Harrison v. State, 394 S.W.2d 713, 717 (Tenn. 1965). We therefore reverse Defendant's felony DUI conviction and remand this matter for a new trial in which guilt or innocence is determined in a proceeding separate from that which requires the jury to hear evidence concerning prior DUI convictions.

## B. Defendant's Misdemeanor Convictions

Having decided that the proof of prior DUI convictions unfairly compromised Defendant's right to a fair trial on the felony DUI offense, it is neither reasonable or logical to conclude that the same evidence had no effect on the jury's determination of guilt for the misdemeanor offenses. Because the proof of Defendant's four DUI convictions was not relevant to any issue regarding whether or not she was guilty of driving with a revoked license and child endangerment, it was error to admit evidence regarding these convictions. See Tenn. R. Evid. 402. The error was not harmless. Therefore, we also reverse the convictions for driving on a revoked license and child endangerment, and remand these cases for a new trial. See Tenn. R. App. P. 36(b).

Even though we have reversed Defendant's convictions, errors noted during our review of the record compel us to address additional issues concerning Defendant's conviction for driving while her license was revoked. Specifically, the indictment was erroneously considered as charging driving on a revoked license, second offense, a Class A misdemeanor, and the jury instructions regarding this charge were also erroneous.

Because the issues concerning the errors we shall discuss were not raised in the briefs of either party nor included in Defendant's motion for new trial, we address these issues under the doctrine of "plain error," which provides that "[a]n error which has affected the substantial rights

-4-

of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice." Tenn. R. Crim. Pro. 52(b).

In State v. Adkisson, 899 S.W.2d 626 (Tenn. Crim. App. 1994), this Court developed five factors to consider when deciding whether an error constitutes "plain error": "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'" Id. at 641-42.

This test was formally adopted by our supreme court in State v. Smith, 24 S.W.3d 274 (Tenn. 2000) for use when reviewing a record for plain error. Id. at 282-283. The presence of all five factors must be established by the record before the existence of plain error may be recognized, id. at 283, and the "'plain error' must [have been] of such a great magnitude that it probably changed the outcome of the trial." Adkisson, 899 S.W.2d at 642. See also Tenn. R. App. P. 13(b) (providing an appellate court with wide discretion in recognizing issues that have been waived due to a procedural default or which have not been raised by the parties). For reasons which shall become apparent later in this opinion, we find that the record establishes the presence of the five requisite factors enumerated supra.

First, we observe that the indictment includes no allegations that the driving on a revoked license charge was a second or subsequent offense. Although the heading on the first page of the indictment lists this charge as a "Class A Misdemeanor" and "second offense," the charging portion of the indictment, which lists the elements of the offense and informs the defendant of the specific charge against which she must defend, alleges a "Class B" misdemeanor. Specifically, the indictment states

> That Janice Carol Biskner heretofore on July 14, 1998, in the County aforesaid, did unlawfully and knowingly drive and operate a motor vehicle upon the public roads, highways, streets or alleys of said County and State after the defendant's operators [sic] license *had been revoked as provided by law, for a second or subsequent conviction for driving while intoxicated under Tennessee Code Annotated 55-10-401*, and after the defendant had been notified of such revocation, in violation of Tennessee Code Annotated 55-50-504, against the peace and dignity of the State.

(Emphasis added.)

According to the language in this indictment, Defendant may be convicted only for driving while license revoked, first offense, a Class B misdemeanor. In order to convict Defendant for driving while license revoked as a Class A misdemeanor offense, the indictment must allege, in a separate count, that the current violation was "a second or subsequent" offense. See Tenn. Code Ann. § 40-35-203(e) (1997). Here, no count of the indictment alleged a prior conviction for driving

-5-

with a revoked license.  Tennessee Code Annotated section 55-50-504(a)(2) specifically provides that

> A *second or subsequent violation* of subdivision (a)(1) is a Class A misdemeanor.  A person who drives a motor vehicle on any public highway of this state at a time when the person's privilege to do so is cancelled, suspended or revoked because of a second or subsequent conviction for vehicular assault under § 39-13-106, vehicular homicide under § 39-13-213, or driving while intoxicated under § 55-10-401 shall be punished by confinement for not less than forty-five (45) days nor more than one (1) year, and there may be imposed, in addition, a fine of not less than three thousand dollars ($3,000).

Tenn. Code Ann. §55-50-504(a)(2) (1998) (emphasis added).  Subdivision (a)(1) is the statute section defining first offense "driving while license cancelled, suspended, or revoked," a Class B misdemeanor, and states, in pertinent part, that "a person who drives a motor vehicle on any public highway of this state at a time when the person's privilege to do so is cancelled, suspended, or revoked commits a Class B misdemeanor."  Tenn. Code Ann. § 55-50-504(a)(1) (1998).

The treatment of this case as a Class A misdemeanor was apparently the result of a misinterpretation of Tennessee Code Annotated section 55-50-504(a)(2) by the trial court, the State, and Defendant.  When required to interpret a statute on appeal, our rules of statutory construction require this Court to ascertain and give effect to the legislative intent without unduly restricting or expanding the intended scope of a statute.  Seals v. State, 23 S.W.3d 272, 276 (Tenn. 2000).  We examine the natural and ordinary meaning of the statutory language within the context of the entire statute, without forced or subtle construction that would extend or limit its meaning.  State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000).  Where an ambiguity exists in the statutory language, we must look to the entire statutory scheme in seeking to ascertain the true legislative intent, Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995), and avoid a statutory construction which would render portions of the statute inoperative.  State v. Turner, 913 S.W.2d 158, 160 (Tenn. 1995).  In addition, criminal statutes are to be strictly construed against the State and in favor of the defendant.  State v. Alford, 970 S.W.2d 944, 947 (Tenn. 1998); State v. Bobo, 727 S.W.2d 945, 952 (Tenn. 1987).

We find the language in Tennessee Code Annotated section 55-50-504(a)(2) clearly states that to find a defendant guilty of driving while license revoked as a Class A misdemeanor, the offense must be a "second or subsequent violation."  The indictment does not allege a second or subsequent violation.  Rather, it paraphrases the statutory language from the second sentence of section (a)(2) above, which merely provides a minimum punishment of forty-five (45) days when a defendant is convicted of the Class A misdemeanor offense under certain circumstances, i.e., at a time when the person's privilege to do so was cancelled, suspended or revoked because of a second or subsequent conviction for one of the offenses specified.

In addition, we find that the trial court erred when it gave the following instructions to the jury:

For you to find the defendant guilty of driving on revoked, suspended or cancelled license as a Class A misdemeanor, the State must have proven beyond a reasonable doubt the following:

(1) The defendant unlawfully drove a vehicle upon a public road, highway, street or alley of this county and state, and

(2) The defendant did so at a time when her license or privilege to do so had been suspended, cancelled, or revoked for a second or subsequent conviction for driving while intoxicated and after the defendant had been notified of such revocation, and

(3) The defendant did so knowingly.

*          *          *

For you to find the defendant guilty of driving on revoked, suspended or cancelled license as a Class B misdemeanor, the State must have proven beyond a reasonable doubt the following:

(1) The defendant unlawfully drove a vehicle upon a public road, highway, street or alley of this state and county, and

(2) The defendant did so at a time when her license or privilege to do so had been suspended, cancelled, or revoked, and

(3) The defendant did so knowingly.

The jury charge given the jury concerning the Class A misdemeanor grade of driving while license revoked is incorrect. It erroneously required the jury to make an unnecessary finding--that the revocation of Defendant's license was for a second or subsequent conviction for driving while intoxicated--with language substantively similar to the allegations in the indictment which, as discussed above, was incorrect, and therefore not a proper jury instruction.

"A charge should be considered prejudicially erroneous if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Vann, 976 S.W.2d 93, 101 (Tenn. 1998) (citations omitted). Since the above jury instruction clearly failed to do both, we consider the jury charge regarding the offense of driving while license revoked to be prejudicially erroneous.

In sum, we find that introducing proof of Defendant's prior criminal convictions during her trial caused unfair prejudice as to all three charges, and thereby denied Defendant the procedural fairness she is entitled to under the law. Therefore, we reverse Defendant's convictions and remand these matters for a new trial with proceedings consistent this opinion. The charge for driving on a revoked license is, as alleged in the indictment, a Class B misdemeanor and shall be tried accordingly.

## II. Violation of Constitutional Prohibitions Against Ex Post Facto Laws

Defendant also contends that the 1998 amendment to Tennessee Code Annotated section 55-10-403(a)(1), regarding penalties for DUI convictions, violates state and federal constitutional prohibitions against ex post facto laws in two respects which involve Defendant's right to notice.

Even though Defendant's felony conviction is reversed and remanded, we shall address these issues in the event of further review or for guidance on remand.

Defendant's first argument relies on a notice she received shortly after she was convicted of DUI in April 1994, which informed her that any subsequent DUI offense would be punishable by confinement for not less than 120 days nor more than 11 months and 29 days. See Tenn. Code Ann. § 55-10-403(a)(1) (1993). Confinement for this length of time (less than one year) is consistent with punishment for misdemeanor offenses. However, in 1998, prior to the instant DUI offense, the legislature amended section 55-10-403(a)(1) to provide, among other things, that a fourth or subsequent DUI offense shall be a Class E felony. See Tenn. Code Ann. § 55-10-403(a)(1) (1998) (the amended statute also increases the period of mandatory incarceration and the fine for fourth and subsequent offenses). Defendant contends that the statute, as amended, violates constitutional prohibitions against ex post facto laws because it rendered the information in her 1994 notice of enhancement "incorrect." Defendant further argues that, even if she had not received the 1994 notification regarding subsequent offenses, the current statute does not apply in her case because, according to the provision, "at least one (1) of the violations of § 55-10-401 must occur on or after July 1, 1998." Defendant asserts that this language must refer to *prior* violations, not the triggering offense, in order to satisfy ex post facto requirements regarding notice. We disagree.

Both the United States Constitution, in Article I, Sections 9 and 10, and the Tennessee Constitution, in Article I, Section 11, contain prohibitions against the passage of ex post facto laws by Congress or the General Assembly. State v. Rogers, 992 S.W.2d 393, 401-402 (Tenn. 1999). An ex post facto law within the meaning of the federal and state constitutions has been defined as one that

> makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. Second, every law that aggravates a crime, or makes it greater than it was, when committed. Third, every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. Fourth, every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

Id. (citations omitted). The United States Supreme Court has similarly held that this prohibition "is aimed at laws that *retroactively* alter the definition of crimes or increase the punishment for criminal acts." California Dept. of Corrections v. Morales, 514 U.S. 499, 504, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588 (1995) (citations omitted) (emphasis added). Clearly, the ex post facto clauses in our constitutions forbid enacting laws which alter definitions and/or elements of crimes or increase their punishment at a point in time *after* the offense has been committed.

Regarding Defendant's first argument that the amended statute violates prohibitions against ex post facto laws because it rendered the information in her 1994 notice "incorrect," we find that the analysis used by this Court in State v. Johnson, 970 S.W.2d 500 (Tenn. Crim. App. 1996) is helpful. In Johnson, the defendant challenged his classification and sentencing as a multiple rapist on the ground that his guilty plea to a 1988 prior offense of rape was entered before the "multiple

rapist" statute was enacted. See Tenn. Code Ann. § 39-13-523 (1997). Accordingly, he contended that he was not provided with notice of the possibility of enhanced sentencing if convicted in the future of the same offense and, therefore, the subsequently enacted multiple rapist statute operated ex post facto against him by inflicting a greater punishment than that contemplated when the first offense was committed. Id. at 505. The court in Johnson found, inter alia, that penalty enhancing statutes affect only the sentence for the triggering offense and, thus, do not impermissibly punish prior acts. Id. (citing Gryger v. Burke, 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948) ("the fact that one of the convictions that entered into the calculations by which petitioner became a fourth offender occurred before the Act was passed, [does not] make the Act invalidly retroactive")). In other words, because the enhanced punishment in Johnson was for the latest crime alone, the statute in issue did not operate ex post facto against him. See also State v. Williams, 675 S.W.2d 499, 502 (Tenn. Crim. App. 1984) (enhanced punishment laws, e.g., habitual criminal statutes, are not ex post facto laws, nor do they violate an accused's due process or equal protection rights).

The same reasoning applies in the case sub judice. The statute in issue is clearly a penalty enhancing statute. As such, it does not affect the punishment for any offense prior to its enactment, which means that it also fails to violate constitutional prohibitions against ex post facto laws. Defendant's 1994 notice was accurate when she received it and does not operate to freeze the law regarding the related offense, in effect, voiding subsequent legislation regarding future crimes. Such a rule is neither reasonable or logical.

Defendant's contention that the enhancing statute does not apply because her prior DUI convictions all occurred before July 1, 1998 is likewise without merit. This precise issue was decided in State v. Charles R. Francis, No. E2000-02599-CCA-R3-CD, 2001 WL 1091169, Morgan County (Tenn. Crim. App., Knoxville, Sept. 19, 2001), when this Court addressed the very narrow and specific issue of whether a fourth offense felony DUI conviction, pursuant to Tennessee Code Annotated section 55-10-403(a(1), required that at least one of the defendant's *prior* DUI convictions occur after July 1, 1998. After reviewing the amended statute's language in light of our laws concerning statutory construction, we held that only the fourth or subsequent offense was required to occur on or after July 1, 1998. See id. at *3. Defendant is not entitled to relief on this issue.

### III. Sentencing

Defendant also contends that the trial court erred by applying certain enhancement factors when determining Defendant's sentence and, further, that this error caused it to impose the maximum sentence which is excessive. Even though we have reversed Defendant's convictions, we shall address the sentencing issue in the event of further review or for guidance on remand, if necessary.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. §§ 40-35-401(d), 402(d). The burden is on the appealing party to show that the sentencing is improper. Id. § 40-35-401, Sentencing Commission Comments. If the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors

and principles relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Here, the record reflects that the trial court considered the sentencing principles and all relevant evidence, but inappropriately applied enhancement factors to Defendant's sentence for felony DUI. Therefore, our review is de novo without a presumption of correctness.

The trial court imposed sentences of eleven months and twenty-nine days for Defendant's Class A misdemeanor convictions for child endangerment and driving while license revoked, and a sentence of two years for Defendant's felony DUI conviction. The trial court also denied any form of alternative sentencing and ordered that all sentences be served concurrently, for an effective sentence of two years confinement. In determining the length of Defendant's sentences, the record reveals that the trial court used enhancement factor (1), "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," to enhance the sentences for all three convictions; enhancement factor (15), "[t]he defendant abused a position of public or private trust, or used a special skill in a manner that significantly facilitated the commission or the fulfillment of the offense," to enhance Defendant's sentences for child endangerment and felony DUI; and enhancement factors (10) and (16), applicable when "[t]he defendant had no hesitation about committing a crime when the risk to human life was high," and "[t]he crime was committed under circumstances under which the potential for bodily injury to a victim was great," respectively, to enhance Defendant's sentence for felony DUI. Tenn. Code Ann. § 40-35-114(1), (10), (15), and (16) (1997).

## A. Enhancement Factor (1)

Defendant first argues that enhancement factor (1), requiring the defendant have "a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range" for the offense, Tenn. Code Ann. § 40-35-114(1), is inapplicable to her felony DUI offense. She contends that, because the prior convictions were already used to enhance the offense from a misdemeanor to a felony classification, using them to also enhance the length of her sentence constitutes "double enhancement," which is precluded by law.

It appears that Defendant is confusing the considerations necessary to determine her sentence range classification with the length of her sentence within the range. Defendant was sentenced as a Range I standard offender. A "standard offender" is defined as "a defendant not sentenced as (1) [a] multiple offender as defined by § 40-35-106; (2) [a] persistent offender as defined by § 40-35-107; (3) [a] career offender as defined by § 40-35-108; (4) [a]n especially mitigated offender as defined by § 40-35-109; or (5) [a] repeat violent offender as defined by § 40-35-120." See Tenn. Code Ann. § 40-35-105 (1997). Since the requirements for sentencing as a multiple, persistent, career or repeat violent offender all involve consideration of only prior *felony* convictions, it becomes evident that none of Defendant's prior misdemeanor DUI convictions were used to establish the "appropriate range" for Defendant's sentence.

Notwithstanding this fact, an enhancement factor may not be used to enhance a sentence within the range if the proof used to establish the factor was used to also prove the offense. State v. Jones, 883 S.W.2d 597 (Tenn. 1994). Thus, because the proof necessary to convict Defendant of

-10-

the felony DUI offense required the State to show Defendant's criminal record contained a minimum of *three* prior DUI convictions, these may not be used to enhance Defendant's sentence. Defendant has *four* prior convictions, however, and the fourth is therefore applicable to establish the enhancement factor.

## B. Enhancement Factor (15)

Defendant also contends that enhancement factor (15), applicable when the defendant abused a position of public or private trust, was improperly applied to her sentences for child endangerment and felony DUI. In general, application of this factor requires a finding, first, that defendant occupied a position of trust, either public or private. See State v. Kissinger, 922 S.W.2d 482, 488 (Tenn. 1996). The position of parent, step-parent, babysitter, teacher, coach are examples, see id., and there is no doubt that Defendant, as the parent, is properly placed into this category. Whether or not a position of trust exists also turns upon the nature of the relationship, namely, whether the offender occupied a position that promoted confidence, reliability, or faith. If the evidence supports that finding, then the court must determine whether the position occupied was also abused by the commission of the offense. Id.

With regard to the sentence for child endangerment, we find that Defendant, as the child's mother, occupied a position of trust which she abused when she drove her vehicle in an extremely intoxicated state with her child in the car. We have little doubt that the child would not have been riding in the Jeep with Defendant and, consequently, would not have been endangered but for the fact that she was his mother. Consideration of this factor might only be prohibited if the proof used to establish the abuse of trust also proved an element of the offense of child endangerment. The offense of misdemeanor child endangerment is committed by a person who violates Tennessee Code Annotated § 55-10-401 ("Driving under the influence of an intoxicant") while accompanied by a child under thirteen years of age. See Tenn. Code Ann. § 55-10-414(1) (1998). Since it is not necessary to prove that Defendant abused her position as the child's mother to establish the offense, factor (15) may be considered in determining the sentence for child endangerment in Defendant's case. See State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998) (contrary to felony sentencing determinations which require the court to place on record what enhancement or mitigating factors it found, the misdemeanor sentencing statute requires a trial judge to merely consider enhancement and mitigating factors).

Defendant contends that enhancement factor (15) is inapplicable to her sentence for felony DUI because her abuse of a position of trust was also the basis for her conviction of child endangerment. We agree that this factor does not apply to her sentence for felony DUI, but for reasons other than that given by Defendant. Enhancement factor (15) is generally applied in circumstances where the defendant used his or her position of trust *to facilitate the commission of the offense.* See State v. Franklin, 919 S.W.2d 362, 366 (Tenn. Crim. App. 1995); State v. Harris, 866 S.W.2d 583, 588 (Tenn. Crim. App. 1992). Nothing in the record supports this finding. Consequently, factor (15) does not apply to Defendant's sentence for the felony DUI conviction.

## C. Enhancement Factors (10) and (16)

Finally, Defendant argues that the trial court erred when it used enhancement factors (10) and (16) to enhance her sentence for felony DUI. Enhancement factor (10) is applicable when the proof shows that the defendant exhibited no hesitation about committing a crime when the risk to human life was high, and factor (16) is applicable when the potential for bodily injury to a victim was great. Specifically, Defendant contends that these factors cannot be applied because (1) the criminal conduct necessary to prove them also proved her conviction for child endangerment, (2) the court may only consider harm to the victim when determining whether these factors apply, and (3) enhancement factors (10) and (16) may not be applied together. For the reasons following, we find that factors (10) and (16) were inappropriately applied to enhance her sentence for felony DUI.

It might seem appropriate to apply factor (10) to Defendant's sentence for felony DUI. It is well-settled that enhancement factor (10) may be applied in situations where the defendant's conduct created a *high risk to a person or persons other than the victim*, even when an essential element of the offense requires proof of a risk of death or serious bodily injury, if the proof used to establish factor (10) can be separated from those facts necessary to prove the offense. See State v. Bingham, 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995); State v. Ruane, 912 S.W.2d 766, 784 (Tenn. Crim. App. 1995); State v. Johnson, 909 S.W.2d 461, 464 n.1 (Tenn. Crim. App. 1995); cf. State v. Butler, 900 S.W.2d 305, 314 (Tenn. Crim. App. 1994) (holding that factor (10) should not be applied *unless* persons other than the victim are at risk). Clearly, proof which would establish factor (10) would not be necessary to also prove the offense. Defendant's conduct created a substantial risk to the life of any persons that might be in the path of her Jeep, as well as that of her son, the passenger. Nevertheless, factor (10) may not be applied to Defendant's felony DUI sentence for the following reasons.

First, we note that factor (10) is inapplicable predicated on the risk to Defendant's son because this was the precise ground for her separate conviction of child endangerment. See, e.g. State v. James Edwin Harber, No. W2000-00462-CCA-R3-CD, 2000 WL 1876601 at **4, Crockett County (Tenn. Crim. App., Jackson, Dec. 27, 2000) no perm. to app. filed (where defendant was separately convicted of reckless endangerment based on the risk of harm to the passengers in the vehicle with him at the time of his accident, factor (10) could not be applied to enhance his sentence for vehicular homicide); State v. Ricky Williams, No. E1999-00344-CCA-R3-CD, 2000 WL 772748 at *3, Cocke County (Tenn. Crim. App., Knoxville, June 15, 2000) no perm. to app. filed (application of factor (10), based on risk to children in house, was inappropriately applied to reckless homicide conviction where defendant received separate reckless endangerment conviction for risk caused to children).

Application of factor (10) based on a risk Defendant created to persons other than her child is also precluded in this case. Granted, the use of factor (10) in DUI and similar cases has been upheld on numerous occasions by this Court where the defendant's dangerous use of a vehicle created a danger to other motorists on the same roadway. See Bingham, 910 S.W.2d at 453 (factor (10) applicable to sentence for vehicular homicide where defendant crossed four lanes of traffic on a major highway); State v. Williamson, 919 S.W.2d 69, 83 (Tenn. Crim. App. 1995) (factor (10) was appropriate where defendant drove her car while intoxicated on Labor Day when a higher number of people use the road); Harber, 2000 WL 1876601 at **4 (factor (10) applicable to sentence for vehicular homicide where defendant ran a stop sign with the vehicle's lights off and headed into the

path of an oncoming car); State v. Mark Summers, No. 03C01-9606-CR-00235, 1997 WL 785677, Hamilton County (Tenn. Crim. App., Knoxville, Dec. 4, 1997) perm. to app. denied (Tenn. 1998) (where appellant drove while intoxicated, crossing into oncoming traffic and traveling at a high rate of speed, he presented a considerable danger which warranted application of factor (10)); State v. Jerry Douglas Franklin, No. 01C01-9510-CR-00348, 1997 WL 83772, Davidson County (Tenn. Crim. App., Nashville, Feb. 28, 1997) perm. to app. denied (Tenn. 1997) (factor (10) applicable where defendant drove twenty miles over the speed limit on rural two-lane road and potential for crossing center line placed other drivers at great risk). We have also recognized that "some activities by their very nature cause high risk to human life," and specifically identified "driving on a busy street under the influence of an intoxicant" as a prime example. State v. Jones, 883 S.W.2d 597, 603 (Tenn. Crim. App. 1994). However, factor (10) cannot be applied based on a high risk to life of persons other than the victim(s) absent *some* proof that the danger existed. See Bingham, 910 S.W.2d at 453 (although the defendant was driving very early in the morning, factor (10) was applicable where the record established that she encountered at least two other automobiles); cf. State v. John D. Neblett, No. 01C01-9805-CC-00231, 1999 WL 743633 (Tenn. Crim. App., Nashville, Sept. 24, 1999) perm. to app. denied (Tenn. 2000) (trial court erroneously applied factor (10) where incident giving rise to aggravated vehicular homicide conviction took place at intersection of a state highway, but the record was silent as to whether other motorists were actually present); State v. David T. Jones, No. 01C01-9710-CC-00445, 1998 WL 917810, Hickman County (Tenn. Crim. App., Nashville, Dec. 21, 1998) no perm. to app. filed (factor (10) erroneously applied because the record did not establish that other persons were actually threatened by the defendant's conduct). Facts relevant to sentencing must be established by a preponderance of the evidence–mere conjecture will not suffice. See State v. Winfield, 23 S.W.3d 279, 283 (Tenn. 2000). Because the record as it presently exists in the case sub judice does not contain any proof that other persons or motorists were either in the vicinity or placed at risk by Defendant's conduct, factor (10) was inapplicable to her felony DUI sentence. We may not assume that risk existed in the absence of *any* facts in the record.

At one time, factor (16) was also considered applicable, even when risk of bodily injury was an element of the offense, under circumstances where the defendant's conduct created a risk of bodily injury to persons other than the named victim of that particular offense. See State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995). This holding was subsequently called into doubt by our decision in State v. Charles Justin Osborne, No. 01C01-9806-CC-00246, 1999 WL 298220 at *3 (Tenn. Crim. App., Nashville, May 12, 1999), which found that Sims had been implicitly rejected by State v. Bingham, 910 S.W.2d 448 (Tenn. Crim. App. 1995) ("Bingham . . . distinguishes between enhancement factors (10) and (16) in that factor (10) may be supported by risk to persons other than a victim of the convicted offense while factor (16) may not"). This issue does not require us to resolve the inconsistent application of factor (16) within this Court. Factor (16) is not applicable to Defendant's sentence for felony DUI because she was separately convicted for the danger to her child, and the record contains no proof of any other victims.

In conclusion, our review reveals that enhancement factors (10), (15), and (16), were applied in error to Defendant's felony DUI sentence, which leaves factor (1) as the sole factor properly applicable to enhance Defendant's felony conviction based upon the facts in this record.

As a final matter, we observe that the judgment forms pertaining to Defendant's convictions for DUI and driving while license revoked reflected the proper statute section numbers but failed to indicate whether the convictions were a felony or misdemeanor and what class of offense the Defendant was convicted of. Whenever a judgment is filed, it should reflect whether the conviction is for a felony or a misdemeanor, as well as the appropriate "class" of the offense.

## CONCLUSION

For the foregoing reasons, we reverse Defendant's convictions and remand these matters for a new trial. We hold that when a defendant is charged with driving under the influence of an intoxicant ("DUI"), fourth or subsequent offense, Tenn. Code Ann. § 55-10-401, a Class E felony, guilt or innocence must be determined in a proceeding separate from that which requires the jury to hear evidence concerning prior DUI convictions, and we find that it was also reversible error to allow proof of Defendant's prior DUI convictions during her trial on the charges of child endangerment and driving on a revoked license. We also hold that penalties imposed under the 1998 amendment to Tennessee Code Annotated section 55-10-203(a)(1) do not violate an accused's constitutional rights against ex post facto laws. Finally, upon remand, the charge of driving on a revoked license shall be treated as a Class B misdemeanor.

THOMAS T. WOODALL, JUDGE

-14-