
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 15, 2017

**L.B. RITTENBERRY, JR. v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2009-A-646      Mark J. Fishburn, Judge**

_____

**No. M2016-00409-CCA-R3-PC**

_____


Petitioner, L.B. Rittenberry, Jr., was convicted of second degree murder despite his claim of self-defense.  He appeals the denial of his petition for post-conviction relief, which alleged ineffective assistance of trial counsel.  Petitioner argues that the post-conviction court erred by finding that he was not prejudiced by trial counsel's failure to adequately investigate the victim's prior history of violence.  We affirm the decision of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Jennifer Hall, Nashville, Tennessee, for the appellant, L.B. Rittenberry, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Brian Ewald, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

*Procedural History and Factual Summary*

Over eight years ago, Petitioner killed Charles Steele.  Petitioner was arrested after he called 911 and reported that he had beaten an intruder with a baseball bat for breaking into his apartment while he was cooking dinner.  The alleged intruder was Charles Steele, a known drug user and occasional drug dealer, with whom Petitioner was acquainted before the incident.  The police investigation yielded evidence which suggested that, on

the night of the incident, both men were consuming alcohol. An autopsy revealed that the victim's system also contained Xanax, Valium, marijuana, and antidepressants. Although Petitioner argued that he acted in self-defense, the State presented evidence at trial which contradicted Petitioner's claim. An expert in forensic pathology testified that the victim "had five lacerations on the back of his head caused by blows powerful enough to split the skin." The victim also had a contusion on his forehead with a carpet imprint, which "was consistent with the victim[] having been hit on the head while he was lying face-down on the carpet." A kitchen knife found in the victim's hand was of the same brand as some of Petitioner's own kitchen knives. A cellmate of Petitioner testified that Petitioner admitted to intentionally beating the victim with a bat after the two men got into an argument. Petitioner also told his cellmate that he "put a knife in the wrong place." Petitioner did not indicate that the victim had broken into the apartment. Petitioner was convicted of second degree murder and received a twenty-year sentence. This Court affirmed his conviction on direct appeal. *State v. L.B. Rittenberry, Jr.*, No. M2011-00857-CCA-R3-CD, 2012 WL 3041344, at *1-9 (Tenn. Crim. App. July 26, 2012), *perm. app. denied* (Tenn. Dec. 13, 2012).

Petitioner filed a pro se petition for post-conviction relief. After appointment of counsel, Petitioner filed an amended petition alleging that Petitioner received ineffective assistance from trial counsel. The post-conviction court held an evidentiary hearing during which the following evidence was adduced.

Petitioner introduced a copy of Mr. Steele's criminal history which showed several charges of aggravated assault and a charge of harassment in 2008. However, the only conviction arguably related to violent conduct was a conviction for simple assault in 1999.

Petitioner was represented by two attorneys at trial. Lead counsel had been with the public defender's office for fourteen years at the time of trial and had previously handled between fifteen and twenty murder cases. Lead counsel testified that she "spent hours and hours" investigating Mr. Steele for this case. During her investigation, she discovered an arrest warrant for the 2008 harassment charge. The affidavit of complaint was sworn out by Mr. Steele's brother-in-law. The brother-in-law alleged that he kicked Mr. Steele out of his apartment for using drugs in front of children. Mr. Steele became irate and threatened his brother-in-law. On a later date, Mr. Steele called his brother-in-law and left a message threatening to "bash his brains on the concrete and whip him." Lead counsel testified that although she discovered the warrant, the reason that she did not introduce the warrant at trial was because she "may have just forgotten." Moreover, Mr. Steele's brother-in-law had shown himself to be hostile to Petitioner's case during the pre-trial proceedings, and lead counsel figured that Mr. Steele's brother-in-law would not be cooperative with the defense in this case.

- 2 -

Lead counsel considered her failure to use the harassment warrant "a huge mistake" and immediately directed post-conviction counsel to the existence of the warrant when contacted about the post-conviction petition. Lead counsel insisted that this evidence "absolutely" could have changed the outcome of this case and that her performance in this regard constituted ineffective assistance. Similarly, lead counsel admitted that she had ignored several of Mr. Steele's other previous criminal charges, thinking that they "were just too old to be relevant." Lead counsel opined that failure to seek a ruling on the admissibility of those charges as character evidence was also "a mistake."

Co-counsel testified that she joined this case a few weeks before trial and admitted that that she "had very little interaction" with Petitioner during trial preparations. Similar to lead counsel, co-counsel claimed that Mr. Steele's prior acts of violence were relevant in a self-defense case regardless of how old the prior acts were. Co-counsel opined that Mr. Steele's history of violence should have been investigated and "might or might not have made a difference," depending on what the investigations yielded.

Petitioner testified that the State provided through discovery Mr. Steele's criminal history, which was extensive. During his first meeting with co-counsel, Petitioner learned of Mr. Steele's harassment charge. Trial counsel said that the factual allegations were similar to the facts in this case and asked Petitioner if he knew anything about the incident. Petitioner said that he did not. In a later meeting with trial counsel, Petitioner asked whether Mr. Steele's criminal history would be helpful to his defense. One of the attorneys responded, "We can't use them—the law says anything over ten years old." Petitioner pointed out that neither the harassment charge nor the assault conviction was over ten years old, but trial counsel denied that either could be used at trial. Trial counsel told Petitioner not to worry about it and told him to let them do their job.

Petitioner also introduced a copy of an affidavit of complaint sworn out by the victim's wife in 1988 for assault with an automobile. The complaint alleged:

> Victim was involved in [a] domestic dispute with suspect. Victim was attempting to flee from suspect. Suspect rammed victim's vehicle while she was backing from a drive one street south of Greenland. Victim went to a friend's house w[h]ere suspect rammed vehicle again. Victim was travelling south on Gallatin at Stratford when suspect merged into victim's lane[,] striking passenger side of her vehicle. Victim lost control. Third vehicle involved with a personally injured passenger.

George Russell and Mary Ogg were listed as witnesses on a subpoena associated with that case.

- 3 -

George Russell testified that he was a former Captain of the Nashville Fire Department ("NFD") and retired with almost forty-five years of experience. During his experience with NFD, Mr. Russell responded to the scenes of hundreds of automobile accidents. On January 18, 1988, Mr. Russell was driving in the left lane of traffic on Gallatin Pike. He noticed a vehicle approaching him quickly from behind. The vehicle was moving so fast that Mr. Russell thought it might rear-end him. Mr. Russell was unable to change lanes. As the speeding vehicle neared the rear bumper of Mr. Russell's vehicle, the speeding vehicle suddenly crossed over into oncoming traffic and passed Mr. Russell on the left. The speeding vehicle then proceeded to drive straight into the side of a silver vehicle pulling out of a driveway. Mr. Russell stopped his vehicle near the scene of the collision to check on the drivers. A man exited the vehicle that had been speeding and began calling the woman driving the other vehicle "all kinds of names." The man yelled, "You know I'm gonna get you, and I'm going to kill you!" Mr. Russell called the police. To him, it appeared that the yelling man "wasn't act[ing] in his right mind." The yelling man was "ranting and raving," his face was red, and he was "moving his arms left and right." The yelling man's behavior caused Mr. Russell to worry that the man "might do something" to the woman before the police arrived. Mr. Russell began talking to the woman, and the yelling man turned on Mr. Russell. Before the encounter could escalate further, sirens sounded nearby, and the man returned to his vehicle and fled the scene. Mr. Russell left his name and phone number with the woman, and he left the scene. The police did not talk to him, and Mr. Russell was never contacted about the incident until post-conviction counsel did so.

Mary Jane Vaughn[1] testified that she was driving south on Gallatin Road during a day in 1988. Ms. Vaughn had just dropped one of her daughters off at karate practice and was driving to the store with her other daughter. Ms. Vaughn saw two vehicles, one behind the other, approaching in the opposite lane of traffic. As the two oncoming vehicles were passing Ms. Vaughn's vehicle, the back vehicle rear-ended the front vehicle, causing the front vehicle to swerve into Ms. Vaughn's lane of traffic. The front vehicle collided with Ms. Vaughn's vehicle and "knocked [her] vehicle out of control." Ms. Vaughn's vehicle narrowly missed hitting a telephone pole. Both Ms. Vaughn and her daughter hit their heads, and they left the scene in an ambulance. Ms. Vaughn testified that she did not see who was driving either of the two cars and thought that the incident was simply an automobile accident. However, she later learned that Mr. Steele was driving the back vehicle and that his wife was driving the front vehicle. Ms. Vaughn was subpoenaed to court about the incident, but she chose not to press any charges.

The post-conviction court found that trial counsel was deficient by failing to investigate the underlying facts that gave rise to Mr. Steele's various arrests and conviction. However, the post-conviction court found that Petitioner failed to prove

---

[1] It appears that Mary Ogg's name changed to Vaughn after the incident in 1988.

prejudice from the lack of investigation. The court determined that the witnesses presented at the evidentiary hearing could not definitively prove what happened during the incident precipitating the charge of assault with an automobile, and the court also noted that the incident occurred twenty years prior to the offense in this case. The court also found that the evidence would not have affected the outcome of the trial given the substantial evidence of guilt. The court highlighted that the medical evidence showed that Mr. Steele was assaulted from behind and hit while lying on the ground. Additional evidence suggested that Petitioner awkwardly[2] planted one of his own kitchen knives in Mr. Steele's hand after the attack occurred. Petitioner filed a timely notice of appeal.

*Analysis*

Petitioner pursues only one argument on appeal.[3] He argues that trial counsel rendered ineffective assistance by failing to investigate Mr. Steele's prior history of violence for the purpose of gathering corroborative evidence that Mr. Steele was the initial aggressor and that Petitioner acted in self-defense. The State argues that Petitioner did not prove that the evidence of Mr. Steele's prior violent acts would have been admissible at trial. The State further argues that there is not a reasonable probability that the outcome of the trial would have been different even if evidence of Mr. Steele's prior violent acts was admitted at trial.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). On appeal, this Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Henley*, 960 S.W.2d at 579. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960

---

[2] The post-conviction court reviewed the exhibits from the trial record.

[3] Any issues that were raised in the post-conviction court but have not been pursued on appeal are deemed abandoned. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) ("While the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal."), *perm. app. denied* (Tenn. Apr. 16, 2010).

S.W.2d at 578). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580. "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994), even if a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

Petitioner argues that trial counsel's representation was deficient because they failed to adequately investigate Mr. Steele's prior history of violent conduct. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Burns*, 6 S.W.3d at 462 (quoting *Strickland*, 466 U.S. at 691). "Failure to conduct a reasonable investigation constitutes deficient performance." *Id.* Both lead counsel and co-counsel testified that they acted deficiently by failing to investigate adequately Mr. Steele's prior history of violent conduct as suggested by his criminal history. The post-conviction court agreed with this assessment, noting that such an investigation is particularly important when self-defense is the defense's theory of the case. The State does not argue otherwise on appeal, and likewise we will not disturb the post-conviction court's conclusion on this point.

However, Petitioner still must prove prejudice from his trial counsel's failure to investigate. Even "if a petitioner is able to establish that defense counsel was deficient in the investigation of the facts or calling a known witness, the petitioner is not entitled to relief from his conviction on this ground unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called." *Black v. State*, 794 S.W.2d 752, 757-58 (footnote omitted).

At the evidentiary hearing, Petitioner presented evidence that Mr. Steele was convicted of simple assault in 1999, but no information about the underlying facts of that case was presented. Mr. Steele was arrested for several other offenses, including harassment in 2008 and assault with an automobile in 1988. According to the affidavit of complaint for the former, Mr. Steele's brother-in-law reported that Mr. Steele became upset after being kicked out of his brother-in-law's apartment for drug use. Mr. Steele later called his brother-in-law and threatened "to bash his brains on the concrete and whip him." Lead counsel testified that she was aware of the harassment charge but forgot to introduce it at trial. However, she also testified that Mr. Steele's brother-in-law, who filed the affidavit of complaint, appeared non-cooperative with the defense during pre-trial proceedings in this case.

Regarding the assault with an automobile charge, the affidavit of complaint was filed by Mr. Steele's wife, alleging that Mr. Steele "rammed" his wife's car on two occasions following a domestic dispute. As stated above, Mr. Russell and Ms. Vaughn provided testimony at the evidentiary hearing that was largely consistent with the narrative in the affidavit of complaint. However, both witnesses stated that they would not have been able to identify Mr. Steele if requested. Mr. Russell overheard Mr. Steele

threatening to kill his wife and observed Mr. Steele display aggressive behavior toward both his wife and Mr. Russell. Ms. Vaughn stated that her initial impression was that the collision was simply an accident.

The State argues that Petitioner has not proven that any of this evidence would have been admissible at trial and, therefore, has failed to prove prejudice. Generally, "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Tenn. R. Evid. 404(a). However, when a defendant relies on a theory of self-defense, contending that the alleged victim of a violent crime was the first aggressor, the defense may offer evidence of the victim's prior history of violent conduct. *State v. Ruane*, 912 S.W.2d 766, 781-82 (Tenn. Crim. App. 1995), *abrogated on other grounds by State v. Rogers*, 992 S.W.2d 393, 401 (Tenn. 1999); *see also State v. Chancy Jones*, No. W2010-02424-CCA-R3-CD, 2012 WL 1143583, at *7-8 (Tenn. Crim. App. Apr. 5, 2012), *perm. app. denied* (Tenn. Aug. 16, 2012); *State v. Wayne Robert Wait*, No. E2010-1212-CCA-R3-CD, 2011 WL 5137178, at *12 (Tenn. Crim. App. Oct. 28, 2011), *perm. app. denied* (Tenn. Mar. 7, 2012). However, such evidence is only admissible as corroborative evidence, not substantive proof.[4] *Ruane*, 912 S.W.2d at 781-82. Based on *Ruane*, this Court has held:

> There are three prerequisites to the introduction of corroborative evidence of the victim's first aggressor tendencies: there must be proof that the defendant acted against the victim in self-defense; the trial court must determine whether there is a factual basis underlying the defendant's allegations that the victim had first aggressor tendencies; and the trial court must determine whether the probative value of the corroborative evidence is outweighed by the potential for unfair prejudice.

*Wayne Robert Wait*, 2011 WL 5137178, at *12.

In this case, the parties do not dispute that there was some evidence of self-defense, so we move to the second requirement of a factual basis for the victim's tendency for first aggression. Petitioner points to Mr. Steele's criminal history as presented at the evidentiary hearing. However, the fact of a conviction or an arrest alone is inadequate to corroborate allegations that a victim may have been the first aggressor; instead, the defendant must present competent proof of the underlying facts of the alleged prior acts of aggression. *State v. Laterral Jolly*, No. 02C01-9207-CR-00169, 1993 WL

---

[4] This is in contrast to character evidence admitted pursuant to Tennessee Rules of Evidence 404(a)(2) and 405 where a defendant testifies that he was afraid of the victim based on his personal knowledge of the victim's violent character. Evidence of this nature is available as substantive evidence of the defendant's subjective state of mind. *Chancy Jones*, 2012 WL 1143583, at *7 n.6; *Ruane*, 912 S.W.2d at 780-81.

- 8 -

523590, at \*4 (Tenn. Crim. App. Dec. 15, 1993) ("The mere fact that one has a conviction on his record, does not necessarily prove that he was the first aggressor, or that he even committed an aggressive act. . . . Rather than considering the record of conviction alone, the trial court must determine the underlying facts of the alleged act of aggression."), *perm. app. denied* (Tenn. May 16, 1994); *see also Chancy Jones*, 2012 WL 1143583, at \*8 (concluding that the victim's "orders of protection were not relevant on the issue of the victim's first-aggressor tendencies without some evidence regarding the factual basis supporting the protective orders"). Accordingly, the fact of Mr. Steele's 1999 simple assault conviction alone would not have been admissible to corroborate Petitioner's claim, and Petitioner did not present any testimony about the underlying facts of this incident at the post-conviction evidentiary hearing. Thus, we cannot say that Petitioner was prejudiced by trial counsel's failure to investigate Mr. Steele's assault conviction.

Similarly, Petitioner did not present any testimony about the underlying events that gave rise to the affidavit of complaint for harassment in 2008. Neither the alleged victim in that incident, Mr. Steele's brother-in-law, nor any other witness was offered to establish that Mr. Steele engaged in an act of aggression. Like the judgment of conviction for assault, the affidavit of complaint and the arrest warrant for the harassment charge were not admissible for the purpose of proving the allegations contained therein. Therefore, we cannot say that Petitioner has proven that he was prejudiced by his trial counsel's failure to investigate Mr. Steele's arrest for harassment.

Petitioner also presented the affidavit of complaint for assault with an automobile in 1988. In support, Petitioner presented the testimony of two witnesses to that incident—Mr. Russell and Ms. Vaughn. However, the post-conviction court found that those witnesses "testified that they witnessed what was alleged to be a deliberate assault with an automobile that was believed to have been perpetrated by the victim in this case" and concluded that neither of those witnesses was "able to establish what actually occurred." We agree with the post-conviction court that, without more, the testimony of those two individuals was not enough to establish a factual basis that Mr. Steele had a tendency for first aggression. Furthermore, we also understand the post-conviction court's concern about the temporal distance between the automobile incident in 1988 and the homicide in this case in 2009. Given the considerable time span between the two, it seems reasonable that the probative value may well have been outweighed by the potential for unfair prejudice.

In any event, we also agree with the post-conviction court and the State that Petitioner still would not be entitled to relief even if the evidence of the assault with an automobile had been admitted. Given the strength of the evidence presented at trial, Petitioner cannot prove that there is a reasonable probability that the outcome of his trial would have been different if his trial counsel had investigated and successfully

introduced evidence of Mr. Steele's assault with an automobile in 1988. Succinctly put, the proof at trial showed that Petitioner repeatedly beat the victim from behind and while the victim was on the floor. Afterward, Petitioner placed one of his own kitchen knives in the victim's hand in a poorly-planned attempt to create the illusion of self-defense.

Although Petitioner takes issue with the *Strickland* standard for claims of ineffective assistance of counsel, we are not in a position to change that aspect of the law. Considering the proof presented at the evidentiary hearing and the proof presented at trial, we conclude that Petitioner has failed to prove that he was prejudiced by his trial counsel's deficient performance in investigating Mr. Steele's prior history of violent conduct.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE