**IN THE SUPREME COURT OF TENNESSEE**
**AT JACKSON**
(HEARD AT PARIS)

FOR PUBLICATION

Filed: May 24, 1999

**FILED**

May 24, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

|  |  |  |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | |
| v. | ) | SHELBY CRIMINAL |
| | ) | |
| WILBERT K. ROGERS, | ) | Hon. Chris B. Craft, |
| | ) | Judge |
| Appellant. | ) | |
| | ) | |
| | ) | No. 02S01-9804-CR-00035 |

For the Appellant:

Walker Gwinn
Assistant Public Defender
Memphis, Tennessee

W. Mark Ward
Assistant Public Defender
Memphis, Tennessee

Tony N. Brayton
Assistant Public Defender
Memphis, Tennessee
(Trial Only)

For the Appellee:

John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Todd R. Kelley
Assistant Attorney General
Nashville, Tennessee

William L. Gibbons
District Attorney General
30th Judicial District

Amy Weirich
Assistant District Attorney General
Memphis, Tennessee

# O P I N I O N

AFFIRMED.                                                        DROWOTA, J.

The sole issue in this appeal is whether the common law year-and-a-day rule is currently a viable principle of criminal law in Tennessee. The defendant argued in the Court of Criminal Appeals that his conviction for second degree murder should be set aside because the victim's death did not occur within a year and one day of the fatal stab wounds. The Court of Criminal Appeals rejected the defendant's argument and affirmed his conviction upon finding that the common law year-and-a-day rule was abolished by the Criminal Sentencing Reform Act of 1989. For the reasons that follow, we hold that the rule was not abolished by the 1989 Criminal Sentencing Reform Act. However, the justifications originally supporting recognition of the rule have been eroded by advances in medical science, improved trial procedure, and sentencing reforms. Therefore, we hereby abolish the now obsolete common law year-and-a-day rule. Because the rule has been judicially abrogated by almost every court which has recently considered the issue, we conclude that our decision does not constitute an unforseeable judicial enlargement of a criminal statute; therefore, retrospective application of this decision is not barred by the ex post facto clauses of the state and federal constitutions.[1] Accordingly, we affirm, on the separate grounds stated, the judgment of the Court of Criminal Appeals which upheld the defendant's conviction of second degree murder.[2]

## BACKGROUND

The facts relevant to the legal issue in this appeal are few and undisputed. On May 6, 1994, the defendant, Wilbert K. Rogers, stabbed the victim, James Bowdery,

---

[1]See Tenn. Const. art. I, § 11; U.S. Const. art. I, § 10.

[2]Oral arguments were heard in this case on April 14, 1999, in Paris, Henry County, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

with a butcher knife.  One of the stab wounds penetrated the victim's heart.  Bowdery was treated at the Regional Medical Center in Memphis, and during a procedure to repair the damage to his heart, he went into cardiac arrest.  Bowdery was resuscitated, but he had developed cerebral hypoxia, a condition which results from a loss of oxygen to the brain.  Bowdery's higher brain functions had ceased, and he remained in a comatose state until August 7, 1995, when he died from a kidney infection, a common complication experienced by comatose patients.  Approximately fifteen months had passed from May 6, 1994, the day the defendant stabbed Bowdery, to August 7, 1995, the day Bowdery died.  However, according to the undisputed testimony of Dr. Jerry T. Francisco, a pathologist and the medical examiner for Shelby County, the victim's death was caused by cerebral hypoxia "secondary to a stab wound to the heart."

Based upon this proof, the jury found the defendant guilty of second degree murder.[3]  Relying upon the common law year-and-a-day rule, the defendant asserted in the Court of Criminal Appeals that his conviction should be modified to criminal attempt to commit murder because the victim's death had occurred more than a year and one day after the stabbing incident.  The intermediate court rejected the defendant's argument and held that the Criminal Sentencing Reform Act of 1989 abolished common law defenses including the year-and-a-day rule.  Because the Criminal Sentencing Reform Act became effective in 1989, approximately five years before the defendant committed this offense, the intermediate court also rejected the defendant's contention that abolition of the rule violates the ex post facto prohibitions

---

[3]The defendant had been charged with first degree premeditated murder.

of the state and federal constitutions. Thereafter, we granted the defendant's application for permission to appeal and now affirm, on different grounds, the judgment of the Court of Criminal Appeals.

## YEAR-AND-A-DAY RULE

In this appeal, we are called upon to consider, for the first time since 1907, the common law year-and-a-day rule and to determine whether or not it currently is a viable rule of criminal law in Tennessee. The defendant argues that the rule was not abolished by the Criminal Sentencing Reform Act of 1989 because it relates to causation, which, according to the defendant, is an area of homicide law that is still governed by common law principles. While the defendant acknowledges that this Court has the authority to abrogate the rule, he argues that any judicial abrogation of the rule must be prospectively applied to avoid violating the ex post facto provisions of the state and federal constitutions. In response, the State argues that this Court should hold that the rule was abolished by the comprehensive Criminal Sentencing Reform Act of 1989. Alternatively, the State asks this Court to judicially abrogate the rule. The State asserts that a judicial abrogation of the rule can be retrospectively applied since it is not an unforeseeable judicial enlargement of a criminal statute. We begin our analysis of this issue with a brief overview of the historical development of the common law rule.

## A. Historical Development

The year-and-a-day rule is deeply rooted in the common law. Its lineage is generally traced to the thirteenth century where the rule was originally utilized as a

statute of limitations governing the time in which an individual might initiate a private action for murder known as "appeal of death."  See, e.g., United States v. Jackson, 528 A.2d 1211, 1214 (D.C. 1987); Commonwealth v. Lewis, 409 N.E.2d 771, 773 (Mass. 1980); People v. Stevenson, 331 N.W.2d 1143, 145 (Mich. 1982); State v. Vance, 403 S.E.2d 495, 497 (N.C. 1991); Commonwealth v. Ladd, 166 A.2d 501, 503 (Pa. 1960); State v. Pine, 524 A.2d 1104, 1105 (R.I. 1987); Comment, Taming a Phoenix: The Year-And-A-Day Rule in Federal Prosecutions for Murder, 59 U. Chi. L. Rev. 1337, 1338 (1992).  The "appeal of death" was a private and vindictive action instituted by an interested party and derived from the Germanic custom of "weregild," or compensation for death. Id.  "Appeal of death" actions became obsolete and were abolished in 1819. Lewis, 409 A.2d at 772.  By the eighteenth century, however, the year-and-a-day rule had been extended to the law governing public prosecutions so that a homicide prosecution could not be brought unless the victim died within a year and one day of the injury. Jackson, 528 A.2d at 1214; Lewis, 409 N.E.2d at 772.

Though the rule began in England, its applicability to criminal prosecutions in this country was acknowledged by the United States Supreme Court in 1894 as follows:

> In cases of murder the rule at common law undoubtedly was that no person should be adjudged "by any act whatever to kill another who does not die by it within a year and a day thereafter. . . ."  And such is the rule in this country in prosecutions for murder, except in jurisdictions where it may be otherwise prescribed by statute.

Louisville, Evansville, & St. Louis R.R. Co. v. Clarke, 152 U.S. 230, 239, 14 S.Ct. 579, 581, 38 L.Ed. 422 (1894) (citations omitted) (civil wrongful death action).  The viability of the rule in Tennessee was recognized in Percer v. State, 118 Tenn. 765, 777, 103 S.W. 780, 782 (1907), in which this Court, quoting Wharton on Homicide,

-5-

stated: "[i]n murder, the death must be proven to have taken place within a year and a day from the date of the injury received." Sixty-seven years passed before the rule was next mentioned by the Court of Criminal Appeals. See Cole v. State, 512 S.W.2d 598, 601 (Tenn. Crim. App. 1974) ("The common law provides that death must ensue within a year and a day from the infliction of the mortal wound to constitute punishable homicide."). Our research of reported cases reveals that the rule was most recently invoked by a defendant in a 1995 decision of the Court of Criminal Appeals, State v. Ruane, 912 S.W.2d 766, 774 (Tenn. Crim. App. 1995). In Ruane, as here, the intermediate court opined that the common law rule had been abolished by enactment of the 1989 Criminal Sentencing Reform Act. Id. Interestingly, the discussion of the rule in each of these cases appears to be dicta. It was not a ground upon which the decision rested. Despite the paucity of case law, both parties to this appeal agree that the year-and-a-day rule was a part of the common law of this State.

Three justifications are ordinarily given for the common law rule. The first and most often cited justification is that thirteenth century medical science was incapable of establishing causation beyond a reasonable doubt when a great deal of time had elapsed between the injury to the victim and the victim's death. Therefore, it was presumed that a death which occurred more than a year and one day from the assault or injury was due to natural causes rather than criminal conduct. See State v. Ruane, 912 S.W.2d 766, 774 (Tenn. Crim. App. 1995); People v. Snipe, 192 Cal.Rptr. 6, 7 (Ca. Ct. App. 1972); Jackson, 528 A.2d at 1216; Jones v. Dugger, 518 So.2d 295, 296 (Fla. Ct. App. 1987); State v. Cross, 401 S.E.2d 510, 511 (Ga. 1991); People v. Carrillo, 646 N.E.2d 582, 584 (Ill. 1995); Lewis, 409 N.E.2d at 773;

-6-

Stevenson, 331 N.W.2d at 145; State v. Gabehart, 836 P.2d 102, 105 (N.M. Ct. App. 1992); Vance, 403 S.E.2d at 495; State v. Hefler, 310 S.E.2d, 313 (N.C. 1984); State v. Sandridge, 365 N.E.2d 898, 899 (Ohio Ct. C.P. 1977); Ladd, 166 A.2d at 506; Pine, 524 A.2d at 1106.

Second, it has often been said that the rule arose from the early function of the jury as a reporter of the happenings of the vicinage. Even if expert medical testimony had been adequate to establish causation at common law, it would not have been admissible. Unlike current procedure, in early English courts, jurors were required to rely upon their own knowledge to reach a verdict, and they could not rely upon the testimony of witnesses having personal knowledge of the facts or upon expert opinion testimony. Jackson, 528 A.2d at 1216; Lewis, 409 N.E.2d at 773; Stevenson, 331 N.W.2d at 145-46; Sandridge, 365 N.E.2d at 899.

Finally, the rule has occasionally been characterized as an attempt to ameliorate the harshness of the common law practice of indiscriminately imposing the death penalty for all homicides - first degree murder and manslaughter alike. Jackson, 528 A.2d at 1216; Lewis, 409 N.E.2d at 773; Hefler, 310 S.E.2d at 313; Ladd, 166 A.2d at 506.

## B. Modern Status

Despite its early common law recognition and near universal acceptance, the rule has fallen into disfavor and has been legislatively or judicially abrogated by the

vast majority of jurisdictions which have recently considered the issue.[4]  Most courts

describe the rule as outmoded and obsolete since the reasons justifying its

recognition no longer exist.  In characterizing the rule as an anachronism, courts have

particularly emphasized the many advances of medical science.  For example, the

Ohio Court of Common Pleas stated:

> [t]oday, the retention of the "year and a day" rule is clearly an
> anachronism.  The jury may now rely on the testimony of expert
> witnesses and need not decide issues on the basis of their own
> individual knowledge.  Furthermore, since great advances have been
> made in scientific crime detection and scientific medicine, the doubt
> that a mortal blow is the cause of death, when death ensues a year and
> a day after the blow, has been largely removed.  Consequently, a
> period of a year and a day after which death is conclusively presumed
> to result from natural causes is no longer realistic.

Sandridge, 365 N.E.2d at 899.  Likewise, in holding that the rule had been implicitly

abrogated by its omission from a comprehensive criminal code enacted by the

legislature, the Illinois Supreme Court stated:

> [m]oreover, we note the legislature's wisdom in abolishing the year-
> and-a-day rule.  It was a remnant from the days when medicine and
> science, both as to diagnosis and treatment, were so unsophisticated

---

[4]The rule has been abolished by the legislature in four states.  See Cal. Penal Code § 194
(West 1988 & Supp. 1999); Md. Ann. Code art. 27, § 415 (1996); Mo. Ann. Stat. § 565.003 (Vernon
1979 & Supp. 1999); Wash. Rev. Code Ann. § 9A.32.010 (West 1988 & Supp. 1999)(three-years-and-
a-day).  The highest courts of four additional states have held that the rule was abrogated when it was
not included as part of a comprehensive criminal code adopted by the legislature.  Cross, 401 S.E.2d
at 511 (Ga.); Carillo, 646 N.E.2d at 584 (Ill.); People v. Brengard, 191 N.E. 850 (N.Y. 1934); State v.
Hudson, 642 P.2d 331 (Or. 1982).  Four other states, Colorado, Delaware, North Dakota, and Utah,
have repealed the statute which had codified the rule.  Minister, 486 A.2d at 1200 n.4.  The rule has
been judicially abrogated in ten jurisdictions.  See Jackson, 528 A.2d at 1218 (D.C); Jones, 518 So.2d
at 298 (Fla); Lewis, 409 N.E.2d at 773 (Mass.); Stevenson, 331 N.W.2d at 143 (Mich); State v. Young,
390 A.2d 556 (N.J. 1978); Gabehart, 836 P.2d at 102 (N.M.); Vance, 403 S.E.2d at 495 (N.C.);
Sandridge, 365 N.E.2d at 899 (Ohio); Ladd, 166 A.2d at 506 (Pa.); Pine, 524 A.2d at 1106 (R.I.).
Finally, the Connecticut Supreme Court has held that the rule was not a part of the common law of that
state.  Valeriano v. Bronson, 546 A.2d 1380 (Ct. 1988).  Of those courts which have squarely faced the
issue, only one, the Maryland Court of Appeals, has declined to abrogate the rule and deferred to
legislative judgment.  State v. Minster, 486 A.2d 1197 (Md. 1985).  Shortly thereafter, the Maryland
state legislature abolished the rule.  Given these recent pronouncements, the Rhode Island Supreme
Court opined that "the long life of the rule may result from the infrequency with which the issue has
been raised" and from the fact that courts "have not been given the opportunity to address it" Pine, 524
A.2d at 1106; see also Lewis, 409 N.E.2d at 773.

that mortally wounded persons commonly died shortly after the infliction of a grievous wound. In such circumstances, it was reasonable to presume that if a wounded person died more than a year from the time of the wound, the cause of death was other than the wound. Modern medicine, however, allows doctors to employ a variety of extraordinary, even heroic, means to save and prolong the lives of victims for years, as opposed to days or months. Also, diagnostic post-mortem pathological procedures can now discover and define the cause of death with great particularity and precision.

Carillo, 646 N.E.2d at 585. Similarly, in judicially abrogating the rule, the Michigan Supreme Court stated:

[t]he advances of modern medical science, by extending life and by providing strong evidence of the cause of death, have undermined the wisdom of the irrebuttable presumption that the death of one who expires more than a year and a day after receiving an injury was not caused by the injury. The availability of modern life sustaining equipment and procedures raises the specter of the choice between terminating life-support systems or allowing the defendant to escape a murder charge. The presumption was wooden and arbitrary from the beginning, since it prevented a murder conviction even in those rare cases when causation could be proved. Now, when medical causation can be proven with much greater frequency and certainty, the old rule is simply too often demonstrably wrong to be upheld.

Stevenson, 331 N.W.2d at 146. The North Carolina Supreme Court took "judicial notice of the rapid development and proliferation of the art and science of medicine and crime detection," and stated:

Sophisticated medical tests, analyses, and diagnoses allow positive evidence to be presented to a jury on questions of causation in criminal prosecutions. For the courts to remain judicially oblivious of these advances when considering whether to extend an ancient common law rule would be folly. We must let the light of scientific development illuminate the legal issues of today. It would be incongruous indeed that medical science has developed to the point that it may prolong human life for long periods if that same development be utilized to bar conviction of a killer by prolonging the life of his victim.

Hefler, 310 S.E.2d at 313. Finally, the Massachusetts Supreme Court observed that the rule is "anachronistic" considering "the advances of medical and related science in solving etiological problems as well as in sustaining or prolonging life in the face

-9-

of trauma or disease" and emphasized that "the relatively short time limit is seen as not only capricious but as senselessly indulgent toward homicidal malefactors." Lewis, 409 N.E.2d at 773.

Although the rule has been judicially abrogated in a number of jurisdictions, none of those courts have adopted a new time limit to replace the year-and-a-day rule. In declining to do so, courts emphasize that no arbitrary time frame is needed because abolition of the year-and-a-day rule does not relieve the State of its burden of proving causation beyond a reasonable doubt. See e.g. Jackson, 528 A.2d at 1218 ("Nor is it to suggest that abrogation of the rule would remove all limitations on assessing culpability; limitations necessarily would exist by virtue of the requirements of due process and the government's burden to prove causation beyond a reasonable doubt."); Stevenson, 331 N.W.2d at 146 ("Of course, abolition of the rule would not relieve the prosecution of its duty to prove all of the elements of the crime, including proximate causation, beyond a reasonable doubt."); Sandridge, 365 N.E.2d at 899 ("Finally, it must be emphasized that the refusal to apply the 'year and a day' rule does not deprive the defendant of any fundamental right. In all homicide cases, the burden always falls upon the prosecution to prove proximate causation that death flowed from the wrongful act of the defendant. That must be the critical determinant, and not the expiration of some archaic, arbitrary time period."). These courts also point out that there is no statute of limitations for murder prosecutions and find implementation of an arbitrary time limit which bars murder prosecutions if the victim does not die within a specified period of time inconsistent with public policy. See e.g. Stevenson, 331 N.W.2d at 146 ("No repose or statute of limitations is available for murder in this state."); Ladd, 166 A.2d at 506 ("Society is free to prosecute murderers

-10-

without a statutory limitation, and it is possible that evidence and witnesses may be lost during a long interval between crime and trial. It is therefore not a strange idea to put no restriction of time upon the death of the victim and to require only proof of causation of conventional quality at the trial.").

Therefore, regardless of whether its demise was achieved by legislative or judicial action, in other jurisdictions, abolition of the year-and-a-day rule has not altered the general principle that causation be proven beyond a reasonable doubt. Its abolition simply allows the State to have the opportunity to attempt to prove causation. Having considered the historical development of the rule and the modern trend away from application of the rule, we must next decide whether the year-and-a-day rule remains viable in Tennessee.

### C. Tennessee Status

The Court of Criminal Appeals in this case held that the year-and-a-day rule was abrogated by the Criminal Sentencing Reform Act of 1989. The appellant contends that the intermediate court erred in reaching this conclusion. Rogers argues that the year-and-a-day rule is not a defense, but a substantive principle of law relating to causation. Rogers argues that causation is an area of homicide law which is still governed by common law principles. Accordingly, Rogers argues that the 1989 Act did not abolish the common law year-and-a-day rule which relates to causation. As support for his argument, Rogers relies upon Tenn. Code Ann. § 39-11-104 (1997 Repl.), which provides that "[t]he provisions of this title shall be construed according to the fair import of their terms, including reference to judicial

decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code." (Emphasis added). Rogers contends that this statutory section is further supported by the Sentencing Commission Comments to Tenn. Code Ann. § 39-11-102 (1997 Repl.), which state that "the commission does not intend to abrogate the interpretive rules developed under common law and specifically includes such interpretations under § 39-11-104."

Agreeing with the defendant that the year-and-a-day rule is a substantive principle of law rather than a common law defense, the State nonetheless argues that the year-and-a-day rule was abrogated by the 1989 Act because it was not included as part of the definition of criminal homicide. See Tenn. Code Ann. § 39-13-201 (1997 Repl.). As support for its argument, the State points to Tenn. Code Ann. § 39-11-101(2) (1997 Repl.), which states that one objective of the 1989 Criminal Code was to "give fair warning of what conduct is prohibited, and guide the exercise of official discretion in law enforcement, by defining the act and culpable mental state which together constitute the offense." The State also relies upon Tenn. Code Ann. § 39-11-102(a) (1997 Repl.), which provides that "[c]onduct does not constitute an offense unless it is defined as an offense by statute, municipal ordinance, or rule authorized by and lawfully adopted under a statute." Additionally, the State relies upon the Sentencing Commission Comments to Section 102 which state "[i]t is the intent of the commission that common law offenses be replaced with statutory offenses to effectuate the goals set forth in § 39-11-101(1) and (2)." Finally, the State relies upon court decisions from New York and Georgia which have held that the rule was abolished by passage of a comprehensive criminal code. See Brengard, 191 N.E. at 850; Cross, 401 S.E.2d at 511.

-12-

We have considered the provisions of the 1989 Act, and the arguments advanced by both the defendant and the State, and conclude that the common law rule was not abolished by the Act. First, we agree with the defendant that the rule was not abolished by Tenn. Code Ann. § 39-11-203(e)(2)(1997 Repl.) which provides that "[d]efenses available under common law are hereby abolished." While similar in some respects to a defense in the sense that it precludes a conviction, the year-and-a-day rule is even more powerful than a defense because it entirely precludes a murder prosecution. Secondly, we disagree with the State's basic assertion that the rule was implicitly abolished by its omission from the statute. As the defendant points out, causation is not explicitly included within the statutory definition of criminal homicide; yet, the State conceded at oral argument that the common law causation requirement was not abolished by the 1989 Act. See State v. Barnes, 703 S.W.2d 611 (Tenn. 1985); State v. Randolph, 676 S.W.2d 943 (Tenn. 1984); Letner v. State, 156 Tenn. 68, 299 S.W. 1049 (1927); Copeland v. State, 154 Tenn. 7, 285 S.W. 565 (1926); Odeneal v. State, 128 Tenn. 60, 157 S.W. 419 (1913) (discussing the requirement that causation be proven beyond a reasonable doubt). Statutes in derogation of the common law are to be strictly construed. Perry v. Sentry Ins. Co., 938 S.W.2d 404, 406 (Tenn. 1996). As the defendant points out, common law judicial decisions and interpretive rules are explicitly approved by the statute and by the Sentencing Commission Comments. In addition, criminal statutes are to be strictly construed against the State and in favor of the defendant. State v. Alford, 970 S.W.2d 944, 947 (Tenn. 1998); State v. Bobo, 727 S.W.2d 945, 952 (Tenn. 1987). For these reasons, in the absence of a statutory provision explicitly abolishing the common law rule, we are constrained to disagree with the State's assertion that the year-and-a-day rule was abolished by the 1989 Act.

-13-

The State strongly urges this Court to judicially abrogate the common law rule. While the defendant concedes that this Court has the power to abrogate the rule, he nonetheless argues that we should defer action on this issue to the judgment of the General Assembly. Rogers contends that the General Assembly is in a better position to determine an appropriate substitute time limit to replace the year-and-a-day rule.

This Court has "not hesitated to abolish obsolete common-law doctrines," and we have recognized that "we have a special duty to do so where it is the Court, rather than the Legislature, which has recognized and nurtured" the common law rule. Dupis v. Hand, 814 S.W.2d 340, 345 (Tenn. 1991) (internal quotations and citations omitted). Indeed, we have stated that "we abdicate our function, in a field peculiarly non-statutory, when we refuse to consider an old and court-made rule." Id. Since, as previously stated, the year-and-a-day rule has its roots in the common law, and has in fact never been a part of the statutory law of this State, we refuse the defendant's suggestion to defer this issue to the General Assembly's judgment. This is an issue of law over which our review is particularly appropriate. Accordingly, we will next consider whether the rule should be judicially abrogated.

Without question, the reasons which prompted common law courts to recognize the rule no longer exist. Medical science can now sustain the critically wounded for months and even years beyond what might have been imagined only a few decades ago. Comparable progress has been made in the development of diagnostic skills, so that problems of medical causation are more readily resolved. Modern pathologists are able to determine the cause of death with much greater

accuracy than was possible in earlier times. Moreover, jurors today may rely upon expert testimony, even when the testimony relates to an ultimate issue of fact such as causation. See Tenn. R. Evid. 704; State v. Shuck, 953 S.W.2d 662 (Tenn. 1997). Indeed, adoption of the rules of evidence has made the admission of expert testimony routine. See McDaniel v. CSX Transp., Inc., 955 S.W.2d 257 (Tenn. 1997) (discussing admission requirements). Finally, the death penalty is no longer indiscriminately imposed for all homicides. In Tennessee, the death penalty is a *possible* punishment for only one type of homicide - first degree murder. Even in first degree murder cases, the death penalty is not automatically sought by the prosecutor, nor is it automatically imposed by a jury. The defendant is given a jury sentencing hearing, replete with procedural and substantive safeguards. See Tenn. Code Ann. § 39-13-204 -- 208 (1997 Repl. & Supp. 1998).

"Where the reason fails the rule should not apply." Brown v. Selby, 206 Tenn. 71, 332 S.W.2d 166, 169 (1960). We have previously observed that "[a]s a living and breathing thing, the law changes when necessary to serve the needs of the people. When this basic purpose of the law is slighted or overlooked, then it loses a high degree of its majesty." Dupis, 814 S.W.2d at 345 (citations omitted). Clearly, advances in medical science, improved trial procedure, and sentencing reform have eroded the reasons originally supporting the common law year-and-a-day rule. Accordingly, we hereby abolish the common law rule, and by doing so, join the majority of other jurisdictions which have recently considered the issue. We also reject the defendant's invitation to adopt a substitute time limit to replace the year-and-a-day rule. We agree with those courts which have held that no arbitrary time frame is needed because abolition of the year-and-a-day rule does not relieve the

State of its burden of proving causation beyond a reasonable doubt.  See e.g. Jackson, 528 A.2d at 1218; Stevenson, 331 N.W.2d at 146; Sandridge, 365 N.E.2d at 899.  This safeguard is sufficient to satisfy due process.  Moreover, in light of the fact that there is no statute of limitations for murder prosecutions in Tennessee,[5] imposition of an arbitrary time limit to bar murder prosecutions if the victim does not die within a specified period of time is not consistent with public policy.

### D.  Ex Post Facto Violation

Having determined that the common law rule should be abolished, we must next consider the defendant's claim that the ex post facto clauses of the state and federal constitution require that our decision be prospectively applied.  The State asserts that abrogation of the rule can be retrospectively applied since it is not an unforeseeable judicial enlargement of a criminal statute.

Both the United States Constitution, in Article I, Sections 9 and 10, and the Tennessee Constitution, in Article I, Section 11, forbid the passage of any ex post facto law by Congress or the General Assembly.  An ex post facto law within the meaning of the federal and state constitution has been defined as one that

> makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.  Second, every law that aggravates a crime, or makes it greater than it was, when committed.  Third, every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.  Fourth, every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

---

[5]Tenn. Code Ann. § 40-2-101(a) (Supp. 1998).

Calder v. Bull, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798); see also State v. Pearson, 858 S.W.2d 879, 881 (Tenn. 1993); Miller v. State, 584 S.W.2d 758, 761 (Tenn. 1979) (adopting the categories identified in Calder and stating that "every law which, in relation to the offense or its consequences, alters the situation of a person to his disadvantage" constitutes an ex post facto law).

Although both the federal and state constitutional provisions refer only to legislative acts, the United States Supreme Court has held that the Fifth and Fourteenth Amendments prohibit retroactive application of any "judicial construction of a criminal statute [that] is unexpected and indefensible by reference to the law which has been expressed prior to the conduct in issue." Bouie v. City of Columbia, 378 U.S. 347, 354, 84 S.Ct. 1697, 1703, 12 L.Ed.2d 894 (1964) (internal quotations and citations omitted); accord, Marks v. United States, 430 U.S. 188, 191-92, 97 S.Ct. 990, 992-93, 51 L.Ed.2d 260 (1977). Applying these decisions to the facts in this case, we conclude that judicial abrogation of the year-and-a-day rule is not an unexpected judicial construction that is indefensible by reference to prior law. Prior to the time the defendant stabbed the victim, the common law rule had been judicially or legislatively abolished in many other jurisdictions. See Footnote 4, supra. Several additional state courts had held that the rule was abolished by its omission from comprehensive criminal codes similar to the 1989 Act. Id. Moreover, the year-and-a-day rule has been mentioned favorably in this State only once since 1907, and that statement is in a decision of the Court of Criminal Appeals which is more than twenty years old. Our research indicates that the rule has never served as the ground of decision in any Tennessee case. As previously stated, the Court of Criminal Appeals

in <u>Ruane</u> opined that the year-and-a-day rule had been abolished by passage of the Act. Though the decision in <u>Ruane</u> was rendered after the defendant stabbed the victim in this case, its reasoning reflects the uncertainty surrounding the continuing viability of the rule in light of the passage of the 1989 Act. Given the fact that the rule has been abolished by every court which has squarely faced the issue, and given the fact that the validity of the rule has been questioned in this State in light of the passage of the 1989 Act, we conclude that our decision abrogating the rule is not an unexpected and unforseen judicial construction of a principle of criminal law. Moreover, we emphasize that abolition of the rule does not allow the State to obtain a conviction upon less proof, nor does its abolition impose criminal sanctions for conduct that was heretofore innocent. Accordingly, we apply our decision abolishing the rule retroactively to the facts of this case and affirm the defendant's conviction. See <u>Snipe</u>, 102 Cal. Rptr. at 9; <u>Sandridge</u>, 365 N.E.2d at 899 (Ohio); <u>Ladd</u> 166 A.2d at 506 (Pa.). <u>But</u> <u>see</u> <u>Jackson</u>, 528 A.2d at 1223 (D.C.); <u>Lewis</u>, 409 N.E.2d at 775 (Mass.); <u>Stevenson</u>, 331 N.W.2d at 148 (Mich.); <u>Vance</u>, 403 S.E.2d at 499 (N.C.); <u>Gabehart</u>, 836 P.2d at 105 (N.M.); <u>Young</u>, 390 A.2d at 559 (N.J.); <u>Pine</u>, 524 A.2d at 1107 (R.I.).

## CONCLUSION

After carefully considering the entire record, arguments of counsel, and relevant statutes and precedent, we hereby abolish the obsolete common law year-and-a-day rule and apply our decision retroactively since it does not constitute an unforseeable judicial enlargement of a criminal statute. Accordingly, we affirm, on the separate grounds stated, the judgment of the Court of Criminal Appeals which

upheld the defendant's conviction of second degree murder. It appearing that the defendant in this cause is indigent, costs will be paid by the State of Tennessee.

_____
FRANK F. DROWOTA, III,
JUSTICE

**Concur:**
Anderson, C.J.
Birch, Holder, Barker, JJ.