IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 28, 2025 Session

## STATE OF TENNESSEE v. ANTONIO GIPSON

**Appeal from the Criminal Court for Knox County**
**No. 114303          G. Scott Green, Judge**

_____

**No. E2024-00402-CCA-R3-CD**

_____

A Knox County jury convicted the Defendant, Antonio Gipson, of second degree murder and unlawful possession of a firearm by a convicted felon, and the trial court imposed a sentence of forty years. On appeal, the Defendant argues that the evidence is legally insufficient to support his conviction for second degree murder. He also asserts that the trial court erred by (1) finding that prior threats made by the victim were hearsay; and (2) excluding a video of the victim displaying a firearm in the weeks before the shooting. Upon our review, we respectfully affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and KYLE A. HIXSON, JJ., joined.

Joshua D. Hedrick (on appeal) and Mike Whalen (at trial), Knoxville, Tennessee, for the appellant, Antonio Gipson.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Sean F. McDermott and Kevin Allen, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

### A.   THE SHOOTING OF ALEX WEST

On May 4, 2018, the victim, Alex West, sent two text messages to Dsynquea Allison, his former girlfriend and mother of his child.  According to Ms. Allison, the messages included threats demanding repayment of money and specifically mentioning her then-current boyfriend, the Defendant, by name.  Ms. Allison, who lived in the same apartment complex as the victim, asked her boyfriend, the Defendant, to come to her apartment to talk about the messages.

After talking with Ms. Allison, the Defendant left her residence and proceeded to confront the victim at his apartment.  The victim emerged from his apartment, and an argument ensued between the two men, eventually spilling into the parking lot of the apartment complex.  Following this exchange, the victim began to walk back to his apartment, and the Defendant followed, yelling at him.  When the victim halted outside his apartment, the Defendant stated, "Whatever you and [Ms. Allison] have going on, keep it out—keep me out of it."

About this time, the Defendant reached toward his back pocket where he was carrying a firearm.  Upon seeing the Defendant reach behind his back, the victim started taunting the Defendant, saying, "Pull it.  Pull it.  Pull it," and "Don't pull it if you're not going to use it."  The Defendant then pulled out his weapon and shot the victim in the face.  As the victim succumbed to his injuries, the Defendant walked to his car and drove from the scene.

Officers were called to the scene, and after searching, they recovered a spent shell casing and an intact cartridge.  The lead investigator on the case spoke with a resident of the apartment complex who identified the Defendant as the shooter.  The investigator then contacted the Defendant and asked him to come to the police department and bring the firearm he used in the shooting.  The Defendant complied, and ballistics testing of the firearm showed that it matched the shell casing recovered from the scene and a projectile that was recovered from the victim's head.

## B.    TRIAL, SENTENCING, AND APPEAL

On November 14, 2018, a Knox County grand jury charged the Defendant with the first degree premeditated murder of the victim.[1]  The jury trial began on November 12, 2019.

The State presented testimony from several eyewitnesses who observed portions of the shooting.  Two witnesses, who were on the porch outside a nearby apartment, testified that they saw the Defendant shoot the victim while the victim's hands were empty and extended outward in a gesture.  One of these witnesses further stated that the victim was walking away from the Defendant just before the shooting, with the Defendant closely following.  Both witnesses confirmed that the victim was not reaching for his pockets or waistband at the time of the shooting.

Another witness, who was near her apartment door when the confrontation began, testified that the Defendant and the victim were talking before their argument moved to the parking lot.  She stated that the victim attempted to walk away but that the Defendant followed him.  She also confirmed that the victim did not have a weapon and was not reaching into his pockets or waistband when he was shot.

The Defendant also called several witnesses, including his girlfriend, Ms. Allison. Ms. Allison testified that her relationship with the victim was often "rocky" and "abusive." She stated that the victim had threatened the Defendant in the days before the shooting. She cited a text message from the victim: "You and [the Defendant] have a nice life raising my son."  She also referenced another message in which the victim demanded repayment of money he had loaned her.  Additionally, Ms. Allison recalled an incident in which one of the victim's friends attempted to confront the Defendant.  Ms. Allison admitted she never reported these incidents to law enforcement.  She also acknowledged that she did not witness the confrontation on May 4, 2018, and only heard a gunshot.

The Defendant testified about three prior encounters with the victim.  The first occurred at a McDonald's, where the victim confronted him about a photo and stated, "We know who you are, and we're going to get you."  The second took place two weeks later when the victim confronted him, appearing to be armed.  In the third, the victim brandished

---

[1]    The Defendant was also charged and convicted of the offense of unlawful possession of a firearm by a convicted felon.  However, the Defendant raises no issue concerning the conviction or sentence for this offense.  As such, we do not address this conviction or its sentence further in this appeal.  *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").

a firearm and said, "[Y]ou just don't f***ing listen, do you." The Defendant testified that this led him to purchase the firearm used in the shooting. He did not report any of these incidents to law enforcement.

On the day of the shooting, Ms. Allison called and told the Defendant that the victim was "threatening us again." The Defendant admitted he was armed when he confronted the victim at his apartment.

The Defendant's testimony conflicted with the State's version of events. He claimed that he had argued with the victim at his apartment door before briefly returning to Ms. Allison's apartment in the same complex. As he walked to his car, the victim confronted him with his hand inside his pants. The Defendant believed the victim had a weapon. As he tried to leave, the victim allegedly spit in his face and then threatened to shoot him. The Defendant stepped closer, prompting the victim to back away. According to the Defendant, the victim then stated he was not going to "pull" his gun before lunging. The Defendant said he fired his gun without aiming and claimed the victim dropped his gun as he fell.

Following the trial, the jury convicted the Defendant of the lesser-included offense of second degree murder, and the trial court imposed a sentence of forty years. The Defendant filed a timely motion for a new trial, which the trial court denied on March 5, 2024. The Defendant filed a timely notice of appeal fourteen days later.

## ANALYSIS

In this appeal, the Defendant raises three issues. First, he claims the evidence is legally insufficient to sustain his conviction for second degree murder because he acted in self-defense. He next asserts that the trial court erred in finding that prior threats made by the victim were hearsay. Finally, he argues that the trial court erred in excluding a video of the victim handling a firearm in the weeks before the shooting. We address each of these issues in turn.

### A. LEGAL SUFFICIENCY OF THE EVIDENCE

The Defendant first challenges the legal sufficiency of the evidence supporting his conviction for second degree murder, arguing that the proof established that he acted in self-defense. In response, the State asserts that the jury rejected this defense and that the evidence was otherwise legally sufficient to sustain the Defendant's conviction. We agree with the State.

### 1.       Standard of Appellate Review

"The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review is "highly deferential" in favor of the jury's verdict. *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). Indeed, "[w]hen making that determination, the prosecution is afforded the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *State v. Thomas*, 687 S.W.3d 223, 249 (Tenn. 2024) (citation and internal quotation marks omitted). To that end, "[w]e do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury, as the trier of fact." *State v. Shackleford*, 673 S.W.3d 243, 250 (Tenn. 2023) (citations omitted). "The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citation and internal quotation marks omitted).

When self-defense is fairly raised by the evidence, the State carries the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense. *See* Tenn. Code Ann. § 39-11-201(a)(3); *State v. Perrier*, 536 S.W.3d 388, 403 (Tenn. 2017) (citation omitted). As such, "in the context of judicial review of the jury verdict, in order to prevail, the defendant must show that the evidence relative to justification, such as self-defense, raises, as a matter of law, a reasonable doubt as to his conduct being criminal." *State v. Clifton*, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994); *State v. Myers*, No. W2023-00771-CCA-R3-CD, 2024 WL 3220928, at *8 (Tenn. Crim. App. June 28, 2024) (same), *no perm. app. filed*.

### 2.       Second Degree Murder and Self-Defense

"The first step in evaluating the sufficiency of the evidence is to identify the elements of the offense." *See State v. Rimmel*, No. M2022-00794-SC-R11-CD, 2025 WL 717397, at *4 (Tenn. Mar. 6, 2025). As charged in this case, second degree murder is the "knowing killing of another[.]" Tenn. Code Ann. § 39-13-210(a)(1) (2018). Our supreme court has explained:

Second degree murder is a result of conduct offense and accordingly, [t]he nature of the conduct that causes death or the manner in which one is killed is inconsequential under the second degree murder statute. The statute focuses purely on the result and punishes an actor who knowingly causes another's death.

*State v. Brown*, 311 S.W.3d 422, 431-32 (Tenn. 2010) (citations and internal quotation marks omitted). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b) (2018). Whether a defendant acted knowingly in killing another is a question of fact for the jury to determine after considering factors such as "the character of the assault, the nature of the act and from all the circumstances of the case in evidence." *State v. Davis*, 466 S.W.3d 49, 69 (Tenn. 2015) (citation and internal quotation marks omitted).

The Defendant does not challenge any specific element of his conviction. Nevertheless, viewing the evidence in the light most favorable to the State, the proof shows that the Defendant fired a single shot at the victim, striking the victim in the head and killing him. This court "has recognized on numerous occasions that a jury is entitled to conclude that a defendant commits a knowing killing when he pulls a gun and fires it at a person." *State v. Olive*, No. M2019-01379-CCA-R3-CD, 2021 WL 772635, at *4 (Tenn. Crim. App. Mar. 1, 2021) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. Oct. 13, 2021); *see also State v. Watkins*, 648 S.W.3d 235, 256 (Tenn. Crim. App. 2021) ("The act of shooting someone in the head at intermediate range is reasonably certain to cause the result of death."); *Davis*, 466 S.W.3d at 71 ("[T]he Defendant pointed his gun at the victim and shot him once from a short distance, striking the victim in his torso. This proof was sufficient to support a conviction for second degree murder."). We conclude that the proof is legally sufficient for a rational juror to find the essential elements of second degree murder beyond a reasonable doubt.

Rather than challenging the elements of his conviction, the Defendant instead argues that the evidence is legally insufficient to support his conviction because he acted in self-defense. The defense of self-defense is set forth in Tennessee Code Annotated section 39-11-611, and at the time of the Defendant's trial, the relevant provisions of the statute provided as follows:

Notwithstanding § 39-17-1322, a person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to

retreat before threatening or using force intended or likely to cause death or serious bodily injury, if:

(A)     The person has a reasonable belief that there is an imminent danger of death or serious bodily injury;

(B)     The danger creating the belief of imminent death or serious bodily injury is real, or honestly believed to be real at the time; and

(C)     The belief of danger is founded upon reasonable grounds.

Tenn. Code Ann. § 39-11-611(b)(2) (2018).  As our supreme court has recognized, "Self-defense is a complete defense against a murder charge."  *State v. Hawkins*, 406 S.W.3d 121, 128 (Tenn. 2013).

In the context of this case, a few other principles involving self-defense are important as well.  First, "whether an individual acted in self-defense is a factual determination to be made by the jury as the sole trier of fact."  *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997) (citing *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993)).  Indeed, our supreme court has recognized that "[t]he jury determines not only whether a confrontation has occurred, but also which person was the aggressor.  It also decides whether the Defendant's belief [of] imminent danger was reasonable, whether the force used was reasonable, and whether the Defendant was without fault."  *State v. Pruitt*, 510 S.W.3d 398, 420 (Tenn. 2016) (citation and internal quotation marks omitted).  As such, it is well "within the prerogative of the jury to reject the claim of self-defense."  *Goode*, 956 S.W.2d at 527.

Second, a defendant's beliefs and conduct must be objectively reasonable "to be justified" as self-defense.  *State v. Dunn*, No. E2021-00343-CCA-R3-CD, 2022 WL 2433687, at *17 (Tenn. Crim. App. July 5, 2022) (citing *State v. Bult*, 989 S.W.2d 730, 732 (Tenn. Crim. App. 1998)), *perm. app. denied* (Tenn. Dec. 14, 2022).  Thus, the mere fact that a defendant subjectively believed that his conduct was justified would not establish this defense.  *See State v. Myers*, No. W2023-00771-CCA-R3-CD, 2024 WL 3220928, at *8 (Tenn. Crim. App. June 28, 2024), *no perm. app. filed*.

Finally, it is important not to "conflate[] the ability to use force generally with the use of deadly force."  *State v. Benson*, 600 S.W.3d 896, 906 (Tenn. 2020).  As the supreme court has recognized, "[t]he bar is substantially higher for one trying to fairly raise the issue

7

of the valid use of deadly force." *Id.* After all, the statute requires the defendant using deadly force to have had "a reasonable belief that there [was] an imminent danger of death or serious bodily injury." *See* Tenn. Code Ann. § 39-11-611(b)(2). Thus, where a victim is unarmed, a jury may consider this fact in assessing whether the defendant who used deadly force had a reasonable belief that he or she was in imminent danger of death or serious bodily injury and whether the danger creating that belief was real or honestly believed to be real. *See State v. Dixon*, No. M2016-01517-CCA-R3-CD, 2017 WL 6405153, at *12 (Tenn. Crim. App. Dec. 15, 2017), *perm. app. denied* (Tenn. Apr. 19, 2018); *see also State v. Love*, No. W2021-00233-CCA-R3-CD, 2022 WL 473417, at *10 (Tenn. Crim. App. Feb. 16, 2022), *no perm. app. filed*.

In this case, self-defense was fairly raised by the Defendant's testimony. However, several of the State's witnesses provided testimony directly contradicting the Defendant's assertion that he shot the victim in self-defense. Two of the witnesses testified that the Defendant pursued the victim as the victim was walking away before the Defendant shot him. One witness testified unequivocally that the victim was unarmed, and others stated that the victim's hands were visibly empty at the moment the Defendant shot him. Additionally, all three witnesses affirmed that the victim was not reaching for his pockets or waistband when he was shot.

The Defendant challenges the credibility of these witnesses and argues that the facts are more consistent with his version of events. However, issues regarding witness credibility and the weight to be given to the evidence are questions reserved to the trier of fact. *Shackleford*, 673 S.W.3d at 250. As such, we respectfully decline to reweigh the evidence on appeal. *See, e.g.*, *State v. George*, No. W2023-00124-CCA-R3-CD, 2023 WL 6629731, at *5 (Tenn. Crim. App. Oct. 12, 2023) (declining to reweigh the jury's findings in the context of a self-defense claim), *no perm. app. filed*; *State v. Potts*, No. M2020-01623-CCA-R3-CD, 2022 WL 2348233, at *20 (Tenn. Crim. App. June 29, 2022) (same), *perm. app. denied* (Tenn. Dec. 14, 2022).

From the proof, a rational juror could have found that the Defendant armed himself, confronted an unarmed victim, and then shot that victim after the victim attempted to walk away. The Defendant has not shown that the evidence relating to self-defense raises, as a matter of law, a reasonable doubt as to his conduct being criminal. *See Clifton*, 880 S.W.2d at 743. Because the State presented sufficient evidence from which the jury could have concluded that the Defendant did not act in self-defense, we respectfully affirm the Defendant's conviction for second degree murder.

## B.  EXCLUSION OF VICTIM'S THREATS

The Defendant next argues that the trial court erred when it excluded evidence of the victim's threats against the Defendant in the weeks leading up to the shooting.  More specifically, the Defendant argues that Investigator Booker should have been allowed to testify about threats reported to him by Ms. Allison.  The State responds that, while any statements made by Ms. Allison to Investigator Booker were properly excluded as hearsay, Ms. Allison nevertheless identified the threats in her own testimony at trial.  We conclude that the Defendant is not entitled to relief.

As an initial matter, we cannot determine from the appellate record what particular evidence was actually excluded by the trial court.  The Defendant did not make an offer of proof at trial pursuant to Tennessee Rule of Evidence 103(a)(2), and he did not call Investigator Booker to testify at the hearing on the motion for a new trial.[2]  Moreover, when Ms. Allison later testified, she was not asked what, if anything, she reported to the investigator.  Without an offer of proof, the Defendant has not shown that the investigator's responses to his questions "would lead to relevant or admissible evidence."  *See State v. Stevens*, 78 S.W.3d 817, 840 (Tenn. 2002).

In the absence of a complete and accurate appellate record on these issues, we are unable to evaluate the trial court's evidentiary ruling or determine what effect the ruling had on the outcome of the trial.  *See State v. Davis*, No. W2014-02101-CCA-R3-CD, 2015 WL 5813394, at *5 (Tenn. Crim. App. Oct. 5, 2015) ("Because of the failure of Defendant to make an offer of proof as to the substance of the statement, we are unable to review this issue as there is no testimony in the record to review."), *perm. app. denied* (Tenn. Feb. 19, 2016); *State v. Blocker*, No. E1999-01624-CCA-R3-CD, 2000 WL 726447, at *5 (Tenn. Crim. App. June 5, 2000) ("A review of the record shows that after an objection was sustained on grounds of hearsay, there was no offer of proof as to what the testimony would have been.  We will not speculate as to the nature of this testimony."), *perm. app. denied* (Tenn. Jan. 8, 2001).  As such, we must presume that the trial court's ruling was correct. *See State v. Draper*, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990); *State v. Aaron*, No. M2002-02288-CCA-R3-CD, 2004 WL 1533825, at *13 (Tenn. Crim. App. July 8, 2004) (presuming that the trial court's ruling was correct when "this [c]ourt [did] not have the

---

[2]  Indeed, at the hearing on the Defendant's motion for a new trial, the Defendant appeared to argue that the trial court prohibited *Ms. Allison* herself from testifying about threats she heard from the victim.  However, when the trial court asked the Defendant to identify the portions of the record where an objection was made, the Defendant identified the objection made during Investigator Booker's testimony.  At no point did any party identify the substance of the testimony that the trial court excluded.

9

arguments by both sides as to what the actual objectionable hearsay statement was and what the trial court considered in making its decision"), *perm. app. denied* (Tenn. May 2, 2005).

Even if Investigator Booker should have been allowed to testify about statements that Ms. Allison made to him—and we make no such holding—it is also true that both the Defendant and Ms. Allison later testified about threats made by the victim. Through this testimony, the jury was able to hear about the victim's alleged threats and was able to evaluate the Defendant's claim of self-defense in light of this information. As such, because the Defendant has not shown that the alleged error affected the outcome of the trial, we conclude that any such error would be harmless. *See* Tenn. R. App. P. 36(b); *State v. Rodriguez*, 254 S.W.3d 361, 372 (Tenn. 2008).

We pause to emphasize the importance of offers of proof. Parties cannot speculate their way into appellate relief, and an offer of proof "creates a record so that an appellate court can determine whether there was reversible error in excluding the evidence." *See Alley v. State*, 882 S.W.2d 810, 815 (Tenn. Crim. App. 1994). As the supreme court has recognized,

> In order for an appellate court to review a record of excluded evidence, it is fundamental that such evidence be placed in the record in some manner. When it is a document or exhibit, this is done simply by having the exhibit marked for identification only and not otherwise introduced. When, however, it consists of oral testimony, it is essential that a proper offer of proof be made in order that the appellate court can determine whether or not exclusion was reversible.

*State v. Goad*, 707 S.W.2d 846, 852-53 (Tenn. 1986). We encourage practitioners to be mindful that "[w]hat is in the record sets the boundaries for what the appellate courts may review, and thus only evidence contained therein can be considered." *State v. Bobadilla*, 181 S.W.3d 641, 643 (Tenn. 2005); *see also State v. Hamilton*, No. W2023-01127-CCA-R3-CD, 2024 WL 4130757, at *3 (Tenn. Crim. App. Sept. 10, 2024) ("Stated more simply, if a fact is not in the appellate record, it did not happen."), *perm. app. denied* (Tenn. Feb. 20, 2025).

## C. EXCLUSION OF VIDEO EVIDENCE

Finally, the Defendant argues that the trial court erred when it excluded a video showing the victim carrying a weapon in the weeks before the shooting as corroborating his theory of self-defense. The State responds that the trial court properly excluded the video evidence because it could not corroborate that the victim had first-aggressor tendencies as required by *State v. Ruane*, 912 S.W.2d 766 (Tenn. Crim. App. 1995), *abrogated on other grounds by State v. Rogers*, 992 S.W.2d 393, 401 (Tenn. 1999). We agree with the State.

### 1. Background

As a threshold matter, we observe that the video at issue is not contained in the appellate record. In many cases, it is unrealistic for a party to expect an appellate court to review an evidentiary issue where the court cannot determine what the evidence is in the first instance. *See* Neil P. Cohen et al., *Tennessee Law of Evidence* § 1.03[5][a] (7th ed. 2024) (hereinafter *Tennessee Law of Evidence*). Indeed, where this court is asked to review whether particular evidence was relevant, the absence of that evidence hampers our basic ability to assess its probative value. The absence also affects our assessment of how the exclusion of that evidence could have affected the outcome of the trial. *See, e.g.*, *Thomas v. Smith*, 682 S.W.3d 213, 226 (Tenn. Ct. App. 2023) ("An erroneous exclusion of evidence requires reversal only if the evidence would have affected the outcome of the trial had it been admitted. Reviewing courts cannot make this determination without knowing what the excluded evidence would have been." (citations omitted)).

That said, in some cases involving video evidence, we have been able to conduct appellate review by relying upon the parties' oral representations to the trial court of what the video would have shown. *See State v. Dunn*, No. E2021-00343-CCA-R3-CD, 2022 WL 2433687, at *16 (Tenn. Crim. App. July 5, 2022), *perm. app. denied* (Tenn. Dec. 14, 2022); *State v. Malone*, No. W2020-00364-CCA-R3-CD, 2022 WL 558282, at *19 n.7 (Tenn. Crim. App. Feb. 24, 2022), *perm. app. denied* (Tenn. Aug. 3, 2022). To be clear, this method is "by no means the best or the encouraged method" of making an offer of proof, and parties would be well advised to include the actual evidence at issue in the trial court record. *See Tennessee Law of Evidence* § 1.03[5][d]. In this case, however, we conclude that the parties' descriptions of the video evidence to the trial court are sufficient to conduct a review of the Defendant's issue.

To that end, the Defendant's counsel represented that the video depicted the victim displaying a firearm and placing it in his waistband. The victim apparently recorded the video himself several weeks before his death, and no one else was visibly present with him. The video showed that the victim had a weapon that was different from the one the Defendant described on the day of the shooting.

The Defendant argued that the video corroborated the Defendant's "story" that the victim was carrying a firearm in his waistband at the time of the shooting. After hearing arguments from the parties, the trial court excluded the video as being irrelevant. It reasoned that the victim was not more likely to have carried a firearm on the day of the shooting simply because he carried a weapon weeks before.

### 2.     Standard of Appellate Review

This court reviews "a trial court's decision to admit evidence as relevant under an abuse of discretion standard." *State v. Turner*, 352 S.W.3d 425, 428 (Tenn. 2011); *State v. Tate*, No. W2006-00997-CCA-R3-CD, 2007 WL 1966020, at *5 (Tenn. Crim. App. July 5, 2007) (reviewing *Ruane* issue for an abuse of discretion), *perm. app. denied* (Tenn. Nov. 19, 2007). "Because the term 'discretion' essentially denotes the absence of a hard and fast rule, we will reverse a decision to admit evidence only when the court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Gilliland*, 22 S.W.3d 266, 270 (Tenn. 2000) (citation and internal quotation marks omitted).

### 3.     Victim's Prior Acts as Corroborating First Aggressor Evidence

The Defendant argues on appeal that the video corroborated his version of events and, therefore, supported his claim of self-defense. Generally speaking, "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion[.]" Tenn. R. Evid. 404(a). This court has recognized, though, that "[w]hen a defendant relies on a theory of self-defense and that the alleged victim of a violent crime was the first aggressor, the defense may present evidence of the victim's prior history of violent conduct." *State v. Simpson*, No. M2021-01031-CCA-R3-CD, 2022 WL 16544456, at *17 (Tenn. Crim. App. Oct. 31, 2022) (citing *Ruane*, 912 S.W.2d at 781-82), *no perm. app. filed*.

The law of evidence treats the use of a victim's violent history differently based upon whether the defendant was aware of that history. *See Ruane*, 912 S.W.2d 779. For

12

example, where the defendant asserting self-defense knew of the victim's history of violent conduct, the defendant may testify about his or her knowledge to establish the defendant's fear of the victim. *See State v. Jones*, No. M2022-01620-CCA-R3-CD, 2024 WL 1252218, at \*11 (Tenn. Crim. App. Mar. 25, 2024), *no perm. app. filed*. This evidence "is substantive proof of the defendant's subjective state of mind." *State v. Wilkey*, No. E2021-00549-CCA-R3-CD, 2022 WL 2387762, at \*18 (Tenn. Crim. App. July 1, 2022), *perm. app. denied* (Tenn. Dec. 14, 2022).

By contrast, where the defendant was unaware of the victim's history of violent conduct, "the evidence obviously has no bearing on the defendant's state of mind and is not admissible as substantive proof on that issue." *State v. Joslin*, No. 03C01-9510-CR-00299, 1997 WL 583071, at \*36 (Tenn. Crim. App. Sept. 22, 1997), *perm. app. denied* (Tenn. Nov. 9, 1998). Instead, the evidence offered in this circumstance is limited to corroborating the defendant's claim that the victim was the first aggressor. *See State v. Hill*, 885 S.W.2d 357, 361 n.1 (Tenn. Crim. App. 1994); *State v. Love*, No. W2021-00233-CCA-R3-CD, 2022 WL 473417, at \*8 (Tenn. Crim. App. Feb. 16, 2022) (citing *Ruane*, 912 S.W.2d at 779), *no perm. app. filed*.

Importantly, evidence in this latter category is admissible only as "corroborative evidence and not substantive proof" and is therefore not governed by Tennessee Rules of Evidence 404(a)(2) and 405. *See State v. Gadsden*, No. M2019-01385-CCA-R3-CD, 2020 WL 6791251, at \*10 (Tenn. Crim. App. Nov. 19, 2020), *perm. app. denied* (Tenn. Mar. 17, 2021). Nevertheless, before evidence corroborating that the victim was the first aggressor can be admissible, our decision in *Ruane* requires that three factors be established: (1) the proof must fairly raise the issue of self-defense; (2) there must be a factual basis underlying the defendant's claim that the victim had first aggressor tendencies; and (3) the probative value of the evidence is not outweighed by the danger of unfair prejudice. *See, e.g., State v. Smith*, No. W2018-01509-CCA-R3-CD, 2020 WL 3572071, at \*12 (Tenn. Crim. App. June 30, 2020) (citing *Ruane*, 912 S.W.2d at 781), *perm. app. denied* (Tenn. Dec. 3, 2020); *State v. Jolly*, No. 02C01-9207-CR-00169, 1993 WL 523590, at \*4 (Tenn. Crim. App. Dec. 15, 1993) (cited in *Ruane* and observing that "not all evidence of violent acts establish evidence of aggression"), *perm. app. denied* (Tenn. May 16, 1994).

In this case, the State argues that the Defendant cannot establish the second *Ruane* factor, *i.e.*, that the video supported the claim that the victim had first-aggressor tendencies. We agree. As best as we can understand from the record, the video simply portrays the victim carrying a firearm in his waistband. The victim is apparently alone in the video, and although he may be holding a firearm, nothing else about the description of the video reveals violent conduct or aggressive tendencies. There is no evidence that the victim made

threats or even pointed or aggressively displayed the weapon. Instead, the video may show nothing more than that the victim possessed or carried a firearm at one point in the past. By itself, this evidence is insufficient to support the Defendant's claim that the victim had first-aggressor tendencies. *See State v. Tolbert*, No. 03C01-9707-CR-00325, 1998 WL 694931, at *6 (Tenn. Crim. App. Oct. 7, 1998) ("In the instant case[,] the defendant attempted to introduce testimony that the victim's brother carried a gun. This proof is not relevant to any determination of the possibility that the victim was the first aggressor."), *perm. app. denied* (Tenn. Mar. 15, 1999).

Pushing against this conclusion, the Defendant argues that the probative value of the video is "extremely high" and is essential to his defense. However, evidence of a victim's prior violent acts against others is not permitted simply to corroborate a defendant's broad "version of events" giving rise to a claim of self-defense. Where the victim's actions were unknown to the defendant, the evidence is permitted only to corroborate that the victim was the first aggressor. *See Ruane*, 912 S.W.2d at 781-82. Because the Defendant did not establish that the video evidence satisfied all of the *Ruane* factors, we conclude that the trial court acted within its discretion to exclude the evidence from the trial. The Defendant is not entitled to relief on these grounds.

## CONCLUSION

In summary, we hold that the evidence was legally sufficient to support the Defendant's conviction for second degree murder. We also hold that (1) the appellate record is insufficient to conclude that the trial court erred in excluding evidence of alleged threats by the victim; and (2) the trial court acted within its discretion in excluding a video of the victim carrying a firearm several weeks before the shooting. As such, we respectfully affirm the judgments of the trial court.

s/ **Tom Greenholtz**
TOM GREENHOLTZ, JUDGE